J-S41033-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| RUTH ANN GRANT, AS EXECUTRIX OF THE ESATE OF RUTH M. GRANT, SUCCESSOR IN THE INTEREST TO RUTH M. GRANT | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | No. 380 WDA 2023 |
| LOUIS A. GRANT, JR. | : : : : | |

Appeal from the Judgment Entered March 20, 2023
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s):  Case No. 1172 of 2020

BEFORE:   PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED: December 13, 2023**

Ruth Ann Grant ("the executrix"), the executrix of the estate of Ruth M. Grant ("the decedent"), appeals from the judgment entered in the Court of Common Pleas of Westmoreland County, which held the decedent's partition action abated upon her death, and quieted title in favor of the joint tenant, Louis A. Grant, Jr. ("Appellee").  After a careful review, we affirm.

The relevant facts and procedural history are as follows: On February 27, 2020, the decedent filed a complaint for partition of real property. Therein, the decedent alleged that she and Appellee, who is the decedent's

_____

[*] Former Justice specially assigned to the Superior Court.

son, held title as joint tenants with the right of survivorship to real property located in Murrysville, Pennsylvania ("the property"). She noted there were no mortgages, judgments, or liens encumbering the property, and the residential property did not generate rents, profits, or revenues. The decedent averred that holding joint tenancy with Appellee was no longer tenable, and, therefore, she requested the trial court partition the property.

On June 1, 2020, Appellee filed an answer with new matter and counterclaims. Therein, Appellee averred the decedent acquired her interest in the property by way of fraud, accident, or mistake, and, therefore, she was not a valid and lawful title holder to the property in any respect. Appellee presented three counterclaims: count 1-constructive trust, count 2-unjust enrichment, and count 3-declaratory judgment for adverse possession.

On June 18, 2020, the decedent filed a reply to Appellee's answer with new matter. Also, on this same date, the decedent filed preliminary objections to Appellee's counterclaims. Specifically, the decedent averred Appellee failed to plead his counterclaims with sufficient specificity.

On August 21, 2020, Appellee filed an amended counterclaim petition wherein he continued to raise three counterclaims: count 1-constructive trust, count 2-unjust enrichment, and count 3-declaratory judgment for adverse possession. In support of his amended counterclaims, Appellee averred that, during Appellee's entire lifetime, until January of 2020, the decedent had handled Appellee's bookkeeping and administrative matters, and the decedent

had placed herself in a confidential relationship, thus owing a fiduciary duty to Appellee. He indicated he had placed an unfettered trust in the decedent until January 10, 2020, at which time he discovered the decedent had engaged in wasteful, deceptive practices concerning Appellee's financial resources, which was a breach of the decedent's fiduciary duty to Appellee.

Appellee averred he purchased the property pursuant to an agreement of sale between him, as the buyer, and Laos Kaldi and Clara Kaldi,[1] as the sellers. The decedent was not a party to the agreement of sale; however, on behalf of Appellee, she handled the transaction regarding the property. Appellee averred that, prior to the decedent filing her complaint for partition, he was unaware that a deed dated December 19, 1996, and recorded on December 24, 1996, initially conveyed the property from Laos Kaldi and Clara Kaldi to solely the decedent. Thereafter, by deed dated December 19, 1996, and recorded on January 3, 1997, for reasons unknown to Appellee, the decedent conveyed the property from herself (grantor) to herself and Appellee as joint tenants with the right of survivorship (grantees).

Appellee indicated that, prior to his acquisition of the property, he had been involved in a divorce proceeding. He alleged the decedent, "using her motherly powers of persuasion and taking advantage of [Appellee's] trust…fraudulently or accidentally or mistakenly convinced [Appellee] that it

---

[1] Laos Kaldi and Clara Kaldi were husband and wife.

would be best for [Appellee] and [the decedent] to own the property together to avoid any problems with future girlfriends or spouses of [Appellee]." Appellee's amended counterclaim, 8/21/20, at ¶ 52. Appellee averred the decedent never personally paid for any loans, mortgages, taxes, maintenance, utility bills, or improvements to the property. Further, Appellee averred the decedent never resided or stayed overnight at the property.

Appellee averred that, on January 10, 2020, he was summoned to the decedent's house for a meeting concerning the decedent's handling of the Grant family's financial affairs ("the January meeting"). Upon his arrival, he was met by the decedent, her attorney, and her accountant. During the January meeting, Appellee discovered the decedent had squandered and misappropriated Appellee's financial resources, as well as the family fortune, over which the decedent had control.

Accordingly, in count 1 of his amended counterclaim, Appellee requested the trial court place the property in a constructive trust solely for the benefit of Appellee and to prevent the unjust enrichment of the decedent. In count 2 of his amended counterclaim, Appellee indicated that, from September of 2008 to August of 2010, he made improvements to the property totaling $1,155,282.33, and from January of 2010 to October of 2010, he made

improvements to the property totaling $486,185.69.[2]  He noted the decedent did not pay for any of these improvements with her own funds.  Thus, Appellee averred that, in the event the trial court ordered partition of the property, he must be given credit, and the decedent must account for all sums expended by Appellee, so that the decedent would not be unjustly enriched. In count 3 of his counterclaim, Appellee requested a declaratory judgment that, to the extent the decedent had any interest in the property, Appellee had acquired sole ownership via adverse possession due to his open, exclusive, and continuous possession for over 21 years.[3]

On September 9, 2020, the decedent filed preliminary objections to Appellee's amended counterclaims, and on February 18, 2021, the trial court, noting that Appellee pled his counterclaims with sufficient specificity, overruled the decedent's preliminary objections.  On November 16, 2021, the decedent filed an amended answer to the amended counterclaims.

On May 14, 2022, the decedent died,[4] and on June 24, 2022, the executrix filed a notice of substitution as the plaintiff in the partition action.

---

[2] Appellee attached to his amended counterclaims two documents entitled "Billing Recap," which set forth dates, amounts, and checks for payment related to improvements made to the property.

[3] Appellee averred the real property contains his residence.

[4] In her January 10, 2020, Will, the decedent specifically indicated she knowingly and purposefully left no part of her estate to her son, Appellee.

On July 19, 2022, the trial court gave Appellee permission to amend his answer and new matter with counterclaims. Accordingly, on July 21, 2022, Appellee filed a first amended new matter and second amended counterclaim. Therein, in addition to the defenses raised in the initial new matter, Appellee raised the defense of abatement. Specifically, Appellee alleged any claims the decedent had as a joint tenant seeking severance by partition are barred due to the decedent's death before entry of the judgment in the partition action. He alleged that, since the property immediately passed to him upon the decedent's death, the executrix had no standing and could not substitute herself as a party in the partition action.

Moreover, in amending his counterclaims, in addition to the averments *supra*, Appellee indicated that, prior to the decedent's death, on November 1, 2021, the decedent executed a Quitclaim Deed purporting to transfer the property from herself (as grantor) to herself (as grantee). Appellee contended the Quitclaim Deed "did not sever the joint tenancy, as [the decedent's] conveyance from herself to herself does not clearly and unequivocally signify an intent to sever the joint tenancy, and, during her lifetime, she remained able to retreat from her position of creating a severance of the joint tenancy." Appellee's first amended new matter and second amended counterclaim, 7/21/22, at ¶ 70. Appellee contended that any interest the decedent had in the property was as a joint tenant with the right of survivorship, and thus,

when she died, any interest the decedent had passed to Appellee as the survivor. *Id.* at ¶ 71.

Appellee averred the Quitclaim Deed had no legal effect on the joint tenancy; however, he averred it was a "cloud on the title." Thus, he added a fourth counterclaim: a declaratory judgment to quiet title.

The executrix filed an amended answer to the amended new matter and second amended counterclaims. On August 10, 2022, the executrix filed preliminary objections to the second amended counterclaims. The executrix averred that, as it pertained to the partition complaint, Appellee failed to join the estate as an indispensable party, and as it pertained to Appellee's counterclaims, Appellee did not state the counterclaims with sufficient specificity.

By order entered on October 14, 2022, the trial court overruled the executrix's preliminary objections. As it related to the partition action, relying on *Sheridan v. Lucey*, 395 Pa. 306, 149 A2d 444, 446 (1959), the trial court noted that "the mere pendency of an action in partition, without more, is insufficient to work a severance of the joint tenancy, whereupon an abatement occurs upon the death of the joint tenant." Trial Court Order, filed 10/14/22 (citation omitted). Accordingly, the trial court concluded that the decedent's death on May 14, 2022, during the pendency of the partition action, "invoked a divestiture of [her] interest in favor of the survivor, [Appellee]." *Id.* Consequently, the trial court reasoned that, since the decedent's death legally

vested title in the property to the sole survivor (Appellee), the executrix was not entitled to be substituted as the plaintiff in the partition action. *See id.*

Furthermore, while the trial court recognized there was evidence that the decedent executed a Quitclaim Deed on November 1, 2021, prior to her death and during the pendency of the partition action, the trial court deemed the Quitclaim Deed inapplicable to the partition action. In this vein, the trial court noted that "the Quitclaim Deed was not brought to issue in the partition action until after [the decedent's] death and the Suggestion of Death was filed on May 25, 2022, which is after the partition action should have abated." *Id.* However, the trial court determined the Quitclaim Deed was relevant to Appellee's counterclaim to quiet title, and thus, the trial "court's ruling that the Partition Action abates does not prevent either party from obtaining relief" in a quiet title action. *Id.*

On October 20, 2022, the executrix filed a motion for clarification and/or reconsideration of the trial court's October 14, 2022, order, and on October 21, 2022, Appellee filed a motion for clarification and/or reconsideration of the trial court's October 14, 2022, order. By order filed on October 21, 2022, the trial court denied the executrix's motion for reconsideration.

> However, [since] both sides raised clarification issues and requested a phone conference with [the trial] court, [a phone conference] was held. At that time, the parties agreed that the partition action was abated without prejudice and that [Appellee's] counterclaim to quiet title would survive and proceed. An Order reflecting that agreement was entered on November 4, 2022.

Trial Court Opinion, filed 5/17/23, at 3.

As a result of the trial court's November 4, 2022, order, upon agreement of the parties, Appellee's counterclaim to quiet title remained pending. Accordingly, on November 23, 2022, the executrix filed an answer with new matter to Appellee's fourth counterclaim (the action to quiet title). Therein, the executrix averred the Quitclaim Deed was valid and conveyed the decedent's interest in the property to herself while she was alive, and the purpose of the Quitclaim Deed was to sever the joint tenancy of the decedent and Appellee while creating a tenancy in common between the two parties.

On November 30, 2022, Appellee filed a reply to the executrix's new matter. On December 22, 2022, Appellee filed a motion for judgment on the pleadings. Therein, Appellee reiterated that, prior to the decedent filing her complaint for partition, he was unaware that a deed from Laos and Clara Kaldi as sellers conveyed the property solely to the decedent. Thereafter, the decedent recorded a deed for the property, which named herself as the grantor, and named herself and Appellee as joint tenants with the right of survivorship as grantees.

On November 1, 2021, the decedent executed a Quitclaim Deed conveying her interest in the property to herself. Appellee contended the Quitclaim Deed did not sever the joint tenancy since the decedent's conveyance of her interest in the property from herself to herself did not clearly and unequivocally signify an intent to sever the joint tenancy since,

during her lifetime, she remained able to retreat from her position of creating a severance of the joint tenancy.

Thus, Appellee averred that, at most, the decedent retained her interest in the property as a joint tenant with the right of survivorship and, upon her death, the entire interest in the property passed to Appellee; however, the Quitclaim Deed leaves "a cloud" on the title. Accordingly, Appellee requested the trial court grant his motion and enter judgment on the pleadings in his favor on his remaining counterclaim, which was an action to quiet title.

By order entered on March 6, 2023, the trial court concluded there were no disputed issues of material fact in that all parties agreed that the title to the property "began as a joint tenancy with right of survivorship between [the decedent] and [Appellee],…[and] a Quitclaim Deed was executed by [the decedent] on November 1, 2021, in which she conveyed her interest in the property to herself[.]" Trial Court Order, filed 3/6/23, at 1. The trial court noted that it was tasked with determining, as a matter of law, whether the November 1, 2021, Quitclaim Deed was sufficient to sever the joint tenancy with the right of survivorship.

In this regard, the trial court concluded the Quitclaim Deed did not divest the decedent's interest, and she retained her one-half interest as a joint tenant with the right of survivorship. *Id.* at 2. The trial court held "the Quitclaim Deed conveying [the decedent's] interest in the property to herself did not destroy the four unities, as she retained her interest in the property, and

- 10 -

retreat from said action was possible." ***Id.*** Accordingly, the trial court granted Appellee's motion for judgment on the pleadings as to his counterclaim to quiet title.

Appellee filed a *praecipe* for the entry of judgment in his favor, and on March 20, 2023, judgment was entered in favor of Appellee. On April 5, 2023, the executrix filed a timely notice of appeal to this Court. All Pa.R.A.P. 1925 requirements have been met.

On appeal, the executrix sets forth the following issues in her "Statement of the Questions Involved":

I.     Whether the trial court erred in its determination that the Quitclaim Deed dated November 1, 2021, executed by [the decedent] in connection with real property and improvements….in Murrysville, PA…did not sever the joint tenancy between [the decedent] and [Appellee] prior to [the decedent's] death?

II.    Whether the trial court committed error in its determination that [Appellee's] effort to ignore the Quitclaim Deed did not violate the presumption against joint tenancies with the right of survivorship and was not tantamount to an impermissible restraint on alienation with respect to the property at issue.

III.   Whether the trial court erred in failing to find that, at the time of [the decedent's] death, the subject property was owned by [the decedent] and [Appellee] as tenants in common, and therefore, a one-half interest in said property is currently held subject to the terms and conditions of [the decedent's] Will and administration of her estate?

Executrix's Brief at 4 (suggested answers omitted).

Initially, we note that the executrix's issues challenge the trial court's granting of Appellee's motion for judgment on the pleadings as it relates to

his counterclaim for a declaratory judgment to quiet title. Since declaratory

relief was entered pursuant to a motion for judgment on the pleadings, our

scope and standard of review is as follows:

> Our scope of review on an appeal from the grant of judgment on the pleadings is plenary. Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that "after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a). A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. In determining if there is a dispute as to facts, the court must confine its consideration to the pleadings and relevant documents. On appeal, we accept as true all well-pleaded allegations in the complaint.
>
> On appeal, our task is to determine whether the trial court's ruling was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly be tried before a jury or by a judge sitting without a jury.
>
> Neither party can be deemed to have admitted either conclusions of law or unjustified inferences. Moreover, in conducting its inquiry, the court should confine itself to the pleadings themselves and any documents or exhibits properly attached to them. It may not consider inadmissible evidence in determining a motion for judgment on the pleadings. Only when the moving party's case is clear and free from doubt such that a trial would prove fruitless will an appellate court affirm a motion for judgment on the pleadings.

*Rubin v. CBS Broad. Inc.*, 170 A.3d 560, 564-65 (Pa.Super. 2017) (citation

omitted). *See Consolidation Coal Co. v. White*, 875 A.2d 318 (Pa.Super.

2005) (setting forth standard and scope of review where declaratory relief was

entered pursuant to a motion for judgment on the pleadings).

Moreover,

> [We] observe that the hallmark distinguishing the joint tenancy from the tenancy in common is the right of survivorship, ("*jus accrescendi*"). Thus, on the death of a joint tenant, the entire estate goes to the survivor or survivors free from the claims of the heirs or creditors of the deceased co-tenant. In a tenancy in common, on the other hand, when one co-tenant dies, [her] interest descends or passes by will to [her] heirs or devisees; the remaining co-tenants acquire no additional interest in such an estate.
>
> \*\*\*
>
> Since the passage of the Act of 1812, the question of survivorship has become a matter of intent; and in order to engraft the right of survivorship on a co-tenancy which might otherwise be a tenancy in common, the intent to do so must be expressed with sufficient clarity to overcome the statutory presumption that survivorship is not intended. But it is also true that no particular form of words is required to manifest such an intention.

*Edel v. Edel*, 424 A.2d 946, 947-48 (Pa.Super. 1981) (citations omitted).

In the case *sub judice,* at this juncture, the parties do not dispute the validity of the deed dated December 19, 1996, and recorded on January 3, 1997, which conveyed the property from the decedent (grantor) to the decedent and Appellee as joint tenants with the right of survivorship (grantees). Thus, when the decedent filed her complaint for partition of the property on February 27, 2020, the decedent and Appellee held the property as joint tenants with the right of survivorship.

The issues presented by the executrix, which are intertwined, question

whether, in the context of Appellee's counterclaim to quiet title,[5] the Quitclaim

Deed,[6] which the decedent executed on November 1, 2021, severed the joint

tenancy with right of survivorship, thus creating a tenancy in common by

which the decedent's heirs are entitled to the decedent's share of the property.

These issues involve a question of law, and, thus, we exercise plenary review

over the trial court's decision. *In re Estate of Quick*, 588 Pa. 485, 905 A.2d

471 (2006).

Relevantly, this Court has held:

The essence of a joint tenancy created in this Commonwealth is the four unities: interest, title, time, and possession. Furthermore, specific intent of survivorship is required to create a joint tenancy, otherwise the interest is presumed to be a tenancy in common. Each joint tenant holds an undivided share of the whole estate….During h[er] lifetime, however, a joint tenant may convey h[er] interest to a third party, or [s]he may have the joint

_____

[5] We note an action to quiet title is designed to resolve a dispute over the title to real estate of which the plaintiff is in possession. *Woodhouse Hunting Club, Inc. v. Hoyt*, 183 A.3d 453 (Pa.Super. 2018).

[6] Our Supreme Court has held that:
Quit-claim deeds, long known to the law, are used when a party wishes to sell or otherwise convey an interest [she] may think [she] has in land but does not wish to warrant [her] title. It does not purport to convey anything more than the interest of the grantor at the time of its execution. The distinguishing characteristic of a quitclaim deed is that it is a conveyance of the interest or title of the grantor in and to the property described, rather than of the property itself.
*Greek Catholic Congregation of Borough of Olyphant v. Plummer*, 338 Pa. 373, 12 A.2d 435, 437 (1940) (citation omitted).

tenancy property partitioned, or h[er] interest may be seized and sold by h[er] creditors in execution.

*General Credit Co. v. Cleck*, 609 A.2d 553, 556 (Pa.Super. 1992) (citations omitted).

Thus,

[a] joint tenancy…is severable by the act, voluntary or involuntary, of either of the parties. When this occurs, the tenancy becomes one in common. Although the joint tenancy may be severed by a joint tenant's act which destroys one of the four unities, that act must be of sufficient manifestation that the actor is unable to retreat from the position of creating a severance of the joint tenancy.

*Allison v. Powell*, 481 A.2d 1215, 1216-17 (Pa.Super. 1984) (citation omitted). *See Sheridan*, *supra*.

Here, the trial court determined the November 1, 2021, Quitclaim Deed did not sever the decedent's joint tenancy with Appellee. Specifically, the trial court explained as follows:

[The trial] court ruled, in reliance on *Sheridan*, [*supra*], that the partition action abated upon [the decedent's] death on May 14, 2022. Based on that abatement, her joint interest in the property terminated upon her death and by operation of law reverted to [Appellee] as the joint tenant holding the right of survivorship[7]….[The trial] court did not err or abuse its discretion

_____

[7] We note that it is well-settled that the commencement of a partition action is alone insufficient to sever a joint tenancy because the plaintiff-joint tenant can always retreat from her demand for partition so long as a final judgment has not been entered. *Sheridan*, *supra*. Thus, it follows that in the event a joint tenant dies during the pendency of the action to partition, title to the jointly owned real estate generally passes by right of survivorship to the surviving joint tenant. *Allison*, *supra*.
*(Footnote Continued Next Page)*

in finding that the November 1, 2021, Quitclaim Deed did not sever the joint tenancy between [the decedent] and [Appellee]. The [trial] court applied the standard set forth in **Sheridan**, [**supra**]: "Although a voluntary act on the part of one of the joint tenants is adequate to work a severance, that act must be of sufficient manifestation that the actor is unable to retreat from her position of creating a severance of the joint tenancy." **Id.** at 446. [The trial] court found the application of this principle by the Superior Court in **Wolf v. Nearing**, 272 A.3d 493, [438 WDA 2021] (Pa.Super. 2021) [(unpublished memorandum)] persuasive. As in the **Wolf** case, the quitclaim deed at issue here did not divest [the decedent's] interest in the property and she retained her undivided one-half interest in the property. "A joint tenancy is severed when one or more of the four unities [interest, title, time, and possession] is destroyed." The Quitclaim Deed conveying [the decedent's] interest in the property to herself did not destroy any of the four unities, as she retained her interest in the property, and retreat from said action was possible. The application of his law supports the finding that the joint tenancy remained intact at the time of [the decedent's] death, [the decedent and Appellee] did not hold the property as tenants in common, and, therefore, title passed fully to [Appellee] and not to [Appellee] and [the decedent's] estate in equal shares.

The [trial] court [concludes] this [holding does not] violate the presumption against joint tenancies with the right of survivorship and is [not] tantamount to a [nonpermissive] restraint on alienation with respect to property. A joint tenancy with the right of survivorship already existed prior to the [trial] court's ruling pursuant to the terms of the December 19, 1996, deed, and there is no statute that prevents "the creation of the right of survivorship by the express words of a will or deed…." **Maxwell v. Saylor**, 359 Pa. 94, 58 A.2d 355, 356 (1978). The only decision the [trial] court made was whether, once created, the joint tenancy was properly severed. The case law cited above is clear on how the court is to analyze acts purported to sever a

_____

In the case *sub judice*, the executrix does not dispute this aspect of the law or claim the decedent's commencement of the partition action severed the joint tenancy. Rather, the executrix contends the decedent's execution of the Quitclaim Deed during the pendency of the partition action, and before the decedent's death, resulted in a severance of the joint tenancy.

joint tenancy, and the [trial] court applied the law to the facts of this case in reaching its decision.

Trial Court Opinion, filed 5/17/23, at 4-5 (footnote added).

Initially, we agree with the trial court that this Court's decision in **Wolf** is persuasive.[8] In **Wolf**, **supra**, on January 2, 2001, parents conveyed property to their two daughters, Wolf and Coy, as joint tenants with the right of survivorship. Thereafter, Wolf married Charles, and on May 22, 2020, Wolf executed a deed conveying her one-half interest in the property to herself and Charles as tenants in common.

On July 13, 2020, Wolf and Charles filed a complaint for partition claiming that the May 22, 2020, deed severed the joint tenancy of Wolf and Coy, thus resulting in Coy, Wolf, and Charles holding title as tenants in common. Coy countered that Wolf conveyed the property to herself and Charles because Wolf was diagnosed with a terminal illness. The trial court found the May 22, 2020, deed did not sever the joint tenancy created by the January 2, 2001, deed. A panel of this Court affirmed holding:

As the trial court explained, Wolf did not convey her interest just to a third party, but rather conveyed that interest to herself and her husband. Thus, [t]he retention of an interest in the

_____

[8] We note the executrix argues the trial court erred in relying on **Wolf** since it is an unpublished memorandum and is not consistent with the holdings of other states. However, pursuant to Pa.R.A.P. 126(b), unpublished non-precedential decision of the Superior Court filed after May 1, 2019, may be cited for their persuasive value. Similar to the trial court, we find **Wolf** to be persuasive.

subject property by [] Wolf militates against severance of the survivorship tenancy. We agree.

Our review confirms the conveyance effected by the May 22, 2020, deed was not "of sufficient manifestation that the actor is unable to retreat from [her] position of creating a severance of the joint tenancy." **Sheridan**, [**supra**], 149 A.2d at 446. Specifically, the May 22, 2020, deed resulted in no divestiture of Wolf's interest in the…property. Under the May 22, 2020, deed, Wolf retained her undivided one-half interest in the…property, although purportedly as a tenant in common with Charles. Consequently, the May 22, 2020, deed failed to extinguish Wolf and Coy's joint tenancy.

**Wolf**, 272 A.3d 493, 438 WDA 2021, at *3.

Similar to **Wolf**, the Quitclaim Deed in the instant matter, whereby the decedent purported to convey the property from herself to herself, militates against severance of the joint tenancy. Simply put, the decedent did not convey her interest to a third party. **General Credit Co.**, **supra**.

We agree with the trial court that the decedent's Quitclaim Deed of self-conveyance, from herself to herself, is not sufficient to sever the four unities of joint tenancy. As in **Wolf**, the act was not of sufficient manifestation that the actor was unable to retreat from the position of creating a severance of the joint tenancy.[9] Accordingly, the trial court did not err in quieting title in

---

[9] In developing her argument, we note the executrix points to language the decedent included in the Quitclaim Deed indicating she intended to sever the joint tenancy. However, as the trial court held, despite this language, the decedent, through her self-conveyance, was able to retreat from her position of creating a severance of the joint tenancy. **See Allison**, **supra**.

Appellee's favor based on the pleadings.  ***See Consolidation Coal Co.***,

***supra***.

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>12/13/2023</u>