J-A31026-16

2017 PA Super 292

| | |
|---|---|
| HOWARD RUBIN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| CBS BROADCASTING INC. D/B/A CBS 3 | |
| Appellee | No. 3397 EDA 2015 |

Appeal from the Order Entered October 20, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 1515 November Term, 2014

BEFORE:  BENDER, P.J.E., MOULTON, J., and FITZGERALD, J.[*]

OPINION BY MOULTON, J.:                    **FILED SEPTEMBER 08, 2017**

Howard Rubin appeals the October 20, 2015 order entered in the Philadelphia County Court of Common Pleas granting the motion of CBS Broadcasting Inc. d/b/a CBS 3 ("CBS") for judgment on the pleadings.  We reverse and remand for further proceedings.

This appeal arises from a news report related to Rubin's September 2014 termination from his job as a school police officer at Multi-Cultural Academy Charter School ("MACS") in Philadelphia.  The central issue on appeal is whether the substance of that report – that Rubin was fired from his job "over allegations of child sexual abuse" – was sufficiently close to the

_____

[*] Former Justice specially assigned to the Superior Court.

undisputed facts to warrant judgment on the pleadings for CBS. We conclude that it was not.

On September 29, 2014, during the 6:00 p.m. airing of *Eyewitness News* on a television station owned and operated by CBS, anchor Chris May[1] read the following report regarding Rubin's termination: "A police supervisor at a Philadelphia charter school is fired over allegations of child sexual abuse. Howard Rubin is the suspect. He is accused in the sexual abuse of an underage male student. Rubin worked at the Multi-Cultural Charter School on North Broad Street." Opinion Pursuant to Pa.R.A.P. 1925(a), 1/20/16, at 2 ("1925(a) Op.").

On September 30, 2014, *Eyewitness News* aired the following statement:

> We would like to correct a story we reported yesterday. We reported that a police supervisor at the Philadelphia Multi-Cultural Academy Charter School was fired over allegations that he sexually abused a male student at the school.
>
> According to the school's principal, the supervisor's contract was not renewed by the school. But the principal says the supervisor was never accused of sexual abuse of any student, and his separation from the school did not have anything to do with any allegations of abuse.

_____

[1] May was named as a defendant in Rubin's amended complaint but was not named as an appellee in Rubin's notice of appeal. Not. of App., 10/28/15.

> Sources now tell us that Philadelphia Police Special Victims Unit has no record of any investigation or charges involving the police supervisor.
>
> We apologize for the error.

*Id.* at 2.[2]

On May 8, 2015, Rubin filed an amended complaint alleging defamation and false light invasion of privacy claims against both CBS and May. On May 18, 2015, CBS and May filed an answer with new matter. The new matter referenced, and attached, the September 13, 2014, termination letter to Rubin from James Higgins, MACS' principal. The letter provided as follows:

> Dear Officer Rubin:
>
> This letter is in reference to your employment at [MACS] as a School Police Officer.
>
> As we discussed this past Thursday, September 11, some serious allegations have been made against you, which are now being investigated by police. On Thursday, you were immediately suspended indefinitely, without compensation, and MACS has been conducting its own investigation of these allegations, independent of the police probe.
>
> While we have yet to complete our investigation, we have determined that your behavior, at the very least, and even by your own admission, was unbecoming of a school police officer and a public employee.
>
> You have been warned in writing about fraternizing with minors, and you have acknowledged that you understood that this type of behavior would not be tolerated again.

---

[2] According to Rubin's amended complaint, the original report remained on CBS's website for at least two days after the correction aired. Am. Compl., 5/8/15, ¶ 19.

> Because of your failure to honor this expectation, we have decided that your employment with MACS will not be renewed for the 2014-2015 school year, and as a result, is hereby terminated, effective immediately.
>
> We thank you for your service to our school and wish you the best in your future endeavors.

Ans. to Am. Compl. with New Matter, Ex. K, 5/18/15.

On June 7, 2015, Rubin filed a reply to the new matter. Thereafter, on August 25, 2015, CBS and May filed a motion for judgment on the pleadings, alleging that Rubin could not meet his burden of demonstrating that the news report was materially false, and that because the report was substantially true it was non-actionable as a matter of law. Mot. for Judg. on Pleadings, 8/25/15, at 2, 8. On September 17, 2015, Rubin filed a response. On October 20, 2015, the trial court granted the motion, although on different grounds than those asserted by CBS and May. This appeal followed.

Rubin raises the following issue on appeal: "Upon a Motion for Judgment on the Pleadings, did the Court of Common Pleas[] err in holding that Rubin – a private actor – did not present a cognizable claim of defamation or false light under any standard when the above-referenced publication was ultimately admitted false?" Rubin's Br. at 8.

Our scope and standard of review of the granting of a motion for judgment on the pleadings is well-settled.

> Our scope of review on an appeal from the grant of judgment on the pleadings is plenary. Entry of judgment

- 4 -

on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that "after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a). A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. In determining if there is a dispute as to facts, the court must confine its consideration to the pleadings and relevant documents. On appeal, we accept as true all well-pleaded allegations in the complaint.

On appeal, our task is to determine whether the trial court's ruling was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly be tried before a jury or by a judge sitting without a jury.

> Neither party can be deemed to have admitted either conclusions of law or unjustified inferences. Moreover, in conducting its inquiry, the court should confine itself to the pleadings themselves and any documents or exhibits properly attached to them. It may not consider inadmissible evidence in determining a motion for judgment on the pleadings. Only when the moving party's case is clear and free from doubt such that a trial would prove fruitless will an appellate court affirm a motion for judgment on the pleadings.

*Kelly v. N'wide Ins. Co.*, [606 A.2d 470, 471-72 (Pa.Super. 1992)] (quotations and citations omitted).

*Altoona Reg'l Health Sys. v. Schutt*, 100 A.3d 260, 265 (Pa.Super. 2014)

(some internal citations and quotation omitted).

## I. Defamation

We first examine Rubin's defamation claim. The relevant burdens in a defamation action depend on the status of the plaintiff, the subject matter of

the communication, and the nature of the defendant. *See generally Am. Future Sys., Inc. v. Better Bus. Bur. of Eastern Pa.*, 923 A.2d 389 (Pa. 2007); *Lewis v. Phila. Newspapers, Inc.*, 833 A.2d 185 (Pa.Super. 2003). Because the subject matter of the report is a matter of public concern and CBS is a media defendant, Rubin has the burden of proving both the falsity of the report as well as fault. *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986) (holding that in a defamation case against a media defendant for speech of public concern, there is "a constitutional requirement that the plaintiff bear the burden of showing falsity, as well as fault, before recovering damages"); *see also Lewis*, 833 A.2d at 191. Rubin must prove that the report was **materially** false:

> The law does not require perfect truth, so long as any inaccuracies do not render the substance and "gist" of the statements untrue. *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516, 517, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991). The "gist" of a statement is true if the effect upon a reader is the same regardless of the inaccuracy. *Id.*

*ToDay's Housing v. Times Shamrock Commc'ns, Inc.*, 21 A.3d 1209, 1215 (Pa.Super. 2011). Substantial truth "absolve[s] a defendant even if she cannot justify every word of the alleged defamatory matter; it is sufficient if the substance of the charge be proved true, irrespective of slight inaccuracy in the details." *Masson*, 501 U.S. at 516-17 (quotation omitted).

As to the appropriate standard of fault, this

depends on whether the plaintiff is a public or private figure.[3]  If the plaintiff is a public official or public figure, and the statement relates to a matter of public concern, then to satisfy First Amendment strictures the plaintiff must establish that the defendant made a false and defamatory statement with actual malice.

*Am. Future Sys., Inc.*, 923 A.2d at 400.  In contrast, a private-figure plaintiff may recover by establishing that the defendant acted negligently in publishing the allegedly defamatory statements.  *Joseph v. Scranton Times L.P.*, 129 A.3d 404, 428 (Pa. 2015) (noting that where "plaintiffs are private[-]figure plaintiffs, this Court has held that Pennsylvania requires

_____

[3] Discussing the United States Supreme Court's decision in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), our Supreme Court wrote that:

> the classification as a public figure arises in two circumstances: first, referring to an "all purpose" public figure, the [United States Supreme] Court explained that, "in some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts." [*Gertz*], 418 U.S. at 351, 94 S.Ct. at 3013. Alternatively, a "limited purpose public figure," which according to the Court is more common, is an individual who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Id.*  To determine such status, the Court instructed that it is necessary to consider the "nature and extent of an individual's participation in the particular controversy giving rise to the defamation." *Id.* 352, 94 S.Ct. at 3013 . . . .

*Am. Future Sys., Inc.*, 923 A.2d at 401.

private figures to prove, at a minimum, negligence in a civil libel case"); *see also Am. Future Sys., Inc.*, 923 A.2d at 400.[4]

The trial court recognized that "[i]n Pennsylvania, a private figure plaintiff may prove the element of falsity by either a negligence or actual malice standard." 1925(a) Op. at 6. The court also stated:

> Unfortunately for [Rubin], it is of no moment whether or not he committed the actions alleged in his personnel file. The defamation requirement of "falsity" should not be taken at face value. Rather, [Rubin] must be able to show a reasonable case for either negligence or actual malice in Appellees' reporting.

*Id.* at 8. The trial court did not address the question briefed by the parties below – whether Rubin could establish that the report was materially false. Rather, it found that, whether or not the report was false, Rubin could not establish that CBS acted negligently or with actual malice. *Id.* at 11.[5] We disagree.

---

[4] With regard to damages, "although a showing of simple fault suffice[s] to allow recovery for actual damages, even a private-figure plaintiff [is] required to show actual malice in order to recover presumed or punitive damages." *Hepps*, 475 U.S. at 774.

[5] The falsity and fault elements of defamation are separate inquiries, both of which the plaintiff bears the burden of proving when the statement in question relates to a matter of public concern. *See Lewis*, 833 A.2d at 191. In its motion for judgment on the pleadings, CBS made no argument regarding Rubin's ability to establish CBS's negligence or actual malice. Nor does it defend the trial court's reasoning on appeal. Instead, it again argues that because the report was substantially true, Rubin could not meet his burden of demonstrating that the news report was materially false. *See* Mot. for Judg. on Pleadings, 8/25/15, at 2; CBS's Br. at 14.

## A. Falsity

Whether Rubin can meet his burden of proving falsity turns on whether there exists a material difference between the report's assertion that he was terminated "over allegations of child sexual abuse" and the actual basis for his termination. The September 13, 2014 termination letter states that Rubin was terminated for failing to honor expectations following warnings about "fraternizing with minors." While the termination letter also references "serious allegations" levied against Rubin, the letter could be read to find that Rubin was terminated because he failed to follow a directive prohibiting fraternization with minor students, not because of the "allegations." In other words, though the letter acknowledges the existence of allegations against Rubin, it does not state that those allegations were the basis for Rubin's termination as the news report stated. Conversely, other documents attached to the pleadings support the inference that Rubin was indeed fired based on "allegations of child sexual abuse."[6] At this stage of

_____

[6] The trial court explained the events that preceded the termination letter as follows:

> Two days prior, three complaints were filed against [Rubin]. One alleged [Rubin] "sexually touch[ed]" and "flirt[ed]" with a male. *See* New Matter Exhibit G. Another alleged that Appellant rubbed a male's chest, telling the male not to tell his mom. *See* New Matter Exhibit H. The final document was a lengthy email from a student's mother to Princip[al] Higgins, alleging, among other

*(Footnote Continued Next Page)*

the proceedings, however, without the benefit of pretrial discovery, we cannot say with confidence that Rubin will be unable to establish the falsity of the CBS report.

The question remains, however, whether Rubin will be able to establish that that falsity was material. In other words, was the "gist" of the publication – that Rubin was fired because of allegations of sexual abuse – sufficiently different from what may prove to be the truth – that he was fired for violating a warning about "fraternizing with minors" – to have a materially different "effect upon a viewer"? *ToDay's Housing*, 21 A.3d at 1215.[7] While that difference may not be vast, we conclude that it is material. In the minds of viewers of the CBS broadcast, a termination based on an allegation of "the sexual abuse of an underage male student" surely

---

*(Footnote Continued)* ——————————

> things, "taking advantage and lewd acts on a minor child my son REDACTED." *See* New Matter Exhibit J.
>
> [Rubin's personnel file] also contains a screenshot of Facebook messages from "PhillyHip HopCop", [Rubin's] Facebook account, to a minor user which shows repeated requests from PhillyHip HopCop for the minor to call him. The requests were made on September 6 and 8, 2014 between the times of 11:00 am and 2:00 pm. *See* New Matter Exhibit I.

1925(a) Op. at 2 (some alterations in original).

[7] Of course, further discovery, including depositions of relevant school officials, may very well establish that, despite Principal Higgins' post-publication denial of the report's accuracy, the basis for Rubin's termination was indeed the allegations of abuse.

could carry a greater sting than a termination for violating a personnel directive, even a directive about "fraternizing with minors." Notably, for at least some viewers, the former could suggest that the school had investigated and credited the allegations of abuse, something the termination letter itself expressly disavows.

## B. Fault

Based on the foregoing analysis, we also disagree with the trial court's determination that "the facts could not reasonably support a finding of negligence or malice because [Rubin's] personnel file corroborated Appellees' communication." 1925(a) Op. at 11. The pleadings and attached documents do not make clear either the nature or the source of the information CBS possessed prior to publication. Accordingly, as with the falsity issue, there is not enough information at this stage in the proceedings to say with confidence that Rubin will be unable to establish that CBS acted negligently or maliciously in publishing the report. If the as-yet-undetermined facts support Rubin's claim that he was not terminated "over allegations of child sexual abuse," then he may be able to establish CBS's negligence or malice in publishing the report. Of course, even if he is able to

prove falsity, discovery may establish that he is unable to prove that CBS acted with the requisite fault.[8]

## II. False Light

We next turn to Rubin's claim for false light invasion of privacy, which the trial court concluded must also fail. In Pennsylvania, a claim for false light invasion of privacy requires that: "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the

_____

[8] The trial court focused on the documents in Rubin's personnel file, which it held preclude a finding that CBS acted with fault. But CBS acknowledges that it did not obtain Rubin's personnel file until **after** Rubin filed suit. CBS's Br. at 11. Therefore, the documents themselves cannot stand as an absolute bar to a finding that CBS acted negligently or with actual malice in publishing the report. The trial court's opinion, responding to Rubin's reliance on Principal Higgins' post-publication denial, focused on the Pennsylvania Supreme Court's decision in *Curran v. Philadelphia Newspapers, Inc.*, 439 A.2d 652 (Pa. 1981). In *Curran*, the Court found that "neither the pre-publication denials nor the refusal to comment served to cast sufficient doubt upon the veracity of the . . . publication to make the issue of actual malice a question for a jury." *Id.* at 660. The Court stated that the pre-publication statements, when weighed against information provided by the newspaper's source, "could reasonably have been dismissed as subjective statements not impeaching the integrity of the information." *Id.* Here, the trial court, after emphasizing that Principal Higgins contacted CBS only after the broadcast, opined that even if Principal Higgins had contacted CBS before publication, his denial could have been dismissed by CBS as a subjective statement not impeaching the integrity of Rubin's personnel file. 1925(a) Op. at 10. While the trial court may be correct that a post-publication denial sheds little light on the publisher's fault at the time of publication, that observation does not alter our analysis.

publicized matter[9] and the false light in which the other would be placed."

***Krajewski v. Gusoff***, 53 A.3d 793, 805–06 (Pa.Super. 2012) (quoting Restatement (Second) of Torts § 652E). "[U]nlike the law of defamation, . . . false light invasion of privacy offers redress not merely for the publication of matters that are provably false, but also for those that, although true, are selectively publicized in a manner creating a false impression." ***Id.*** at 806.

The trial court concluded that the "admitted facts cannot support a finding of knowledge of or reckless disregard as to the falsity of the publicized matter" because CBS's report accurately "summarized [Rubin's] termination letter, which was found in [Rubin's] personnel file that contained multiple corroborating documents." 1925(a) Op. at 13. We disagree. As we stated in our analysis of Rubin's defamation claim, there is not enough information at this stage in the proceedings to say with confidence that Rubin will be unable to establish that CBS acted with actual malice.

Accordingly, we reverse the trial court's order granting CBS's motion for judgment on the pleadings and remand for further proceedings consistent with this opinion.

Order reversed. Case remanded. Jurisdiction relinquished.

---

[9] The required standard of fault in a false light claim is thus actual malice. ***See Time, Inc. v. Hill***, 385 U.S. 374, 387 (1967) (defining actual malice as "knowledge that the statements are false or in reckless disregard of the truth").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/8/2017