J-A28039-23

2024 PA Super 118

JOHN R. VIVIAN, JR.            :    IN THE SUPERIOR COURT OF
                                   :           PENNSYLVANIA
            Appellant         :
                                     :
                                     :
           v.                :
                                     :
                                     :
BLANK ROME, LLP, ARTHUR W.    :    No. 1406 EDA 2023
HANKIN, MARK R. ZOLFAGHARI, ST.   :
LUKE'S HOSPITAL OF BETHLEHEM     :
PENNSYLVANIA, RICHARD A.         :
ANDERSON, ROBERT L. WAX,        :
SEYMOUR TRAUB, SUSAN M.         :
SCHANTZ,                              :

Appeal from the Order Entered April 27, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  120303376

BEFORE:   OLSON, J., STABILE, J., and COLINS, J.*

OPINION BY COLINS, J.:                    **FILED JUNE 7, 2024**

John R. Vivian, Jr. ("Plaintiff") appeals from the order of the Court of

Common Pleas of Philadelphia County ("trial court") granting summary

judgment in favor of Blank Rome, LLP ("Blank Rome"), Arthur W. Hankin, Mark

R. Zolfaghari, St. Luke's Hospital of Bethlehem Pennsylvania ("St. Luke's"),

Richard A. Anderson, Robert L. Wax, Seymour Traub, and Susan M. Schantz

(collectively, "Defendants") and dismissing Plaintiff's complaint in which he

asserted claims of defamation, false light invasion of privacy, and abuse of

process against Defendants.  For the reasons set forth below, we affirm.

---

Following the dismissal of two medical malpractice cases against St. Luke's fifteen years ago, the parties and counsel in those actions have remained embroiled in a bitter dispute involving numerous claims of wrongdoing over three successive lawsuits. This decision represents, we hope, the final chapter in this lamentable saga. As it is necessary for our decision, we briefly summarize the entire history of the litigation.

The genesis of these matters lies in the actions of Charles Cullen, a former St. Luke's nurse who confessed to being involved in the death of several of his patients. Cullen began working at St. Luke's in its Coronary Care Unit ("CCU") on June 5, 2000. *Saint Luke's Hospital of Bethlehem v. Vivian*, 99 A.3d 534, 536 (Pa. Super. 2014). In June 2002, hospital staff discovered various used and unused medication was improperly placed in a receptacle for used syringes. *Id.* Suspicion centered on Cullen, who denied wrongdoing but agreed to resign. *Id.* A subsequent investigation by the Lehigh County District Attorney's Office uncovered no evidence that Cullen had harmed his patients. *Id.* at 538. Ultimately, Cullen was fired by his subsequent employer in New Jersey in October 2003, and in December of that year, he confessed to killing patients in both New Jersey and Pennsylvania. *Id.* at 538-39.

Various lawsuits were filed against St. Luke's after Cullen's actions came to light, including two wrongful death and survival actions filed by Plaintiff, who is an attorney, in the Lehigh County Court of Common Pleas ("Lehigh County court") on behalf of the estates of Regina Miller and Marilyn Hall

- 2 -

("Wrongful Death Actions"). Miller and Hall (collectively, "Decedents") died on April 23, 2002, and November 20, 2001, respectively, after being admitted to the St. Luke's CCU with serious coronary conditions during the period when Cullen was employed by the hospital. Complaint, ¶¶3-5; Answer and New Matter, ¶¶3-5; *see also* Miller Complaint, ¶¶5-12; Hall Complaint, ¶¶5-11. In the Wrongful Death Actions, which were filed in 2004, the Estates of Miller and Hall (collectively, "Estates") alleged that Cullen caused the Decedents' deaths by administering unprescribed substances to them and that St. Luke's negligently supervised Cullen and overlooked warning signs related to Cullen's care of the hospital's patients. Miller Complaint, ¶¶13-21; Hall Complaint, ¶¶13-21.[1] Plaintiff filed certificates of merit in conjunction with the filing of the complaints based upon statements provided to him by John J. Shane, M.D. Defendants' Motion for Summary Judgment, 7/15/22, Exhibit 16; *see* Pa.R.Civ.P. 1042.3, 1042.10.

While Cullen confessed in interviews with authorities to his involvement in the killing of eight patients in total, he did not admit to any involvement in the deaths of Decedents. *Miller v. St. Luke's Hospital*, Nos. 3463 & 3467 EDA 2009 (Pa. Super. June 30, 2010), unpublished memorandum at 2. The Estates, as well as various other plaintiffs, sought to depose Cullen in the ensuing civil actions, but he refused. *Id.* Therefore, the Estates attempted

_____

[1] The complaints in the Wrongful Death Actions are included in exhibits to Plaintiff's response in opposition to Defendants' summary judgment motion. *See* Plaintiff's Summary Judgment Response, 8/17/22, Exhibits C, D.

- 3 -

to rely on a forensic pathology expert, Dr. David R. Fowler, to prove Cullen's causation of Decedents' deaths. *Id.* at 3; *see also* Defendants' Motion for Summary Judgment, Exhibit 14. However, Dr. Fowler opined in his report that "[D]ecedents could neither be included or excluded from the group identified as Cullen's victims." *Id.*; *see also* Defendants' Motion for Summary Judgment, Exhibit 14, at 14, 17-18 (Expert Report). St. Luke's moved for summary judgment on the basis that without expert testimony, the Estates could not establish a prima facie case of negligence. *Miller*, Nos. 3463 & 3467 EDA 2009, unpublished memorandum at 3. The trial court granted St. Luke's motion, and this Court affirmed the dismissal of the Wrongful Death Actions. *Id.* at 2-3, 6-7.

On March 25, 2011, St. Luke's filed actions against Plaintiff, Dr. Shane, and the Estates in the Lehigh County court for wrongful use of civil proceedings under the Dragonetti Act, 42 Pa.C.S. §§ 8351-8354, abuse of process, fraudulent misrepresentation, civil conspiracy, and violations of the federal Racketeer Influenced and Corrupt Organizations Act (collectively, "First Dragonetti Actions"). St. Luke's alleged generally that the defendants in the First Dragonetti Actions engaged in a scheme to file the Wrongful Death Actions in the absence of probable cause to support any connection between Cullen and the Decedents' death. *See, e.g.*, Hall Dragonetti Action Complaint, ¶¶148-149, 160, 177-178; Miller Dragonetti Action Complaint, ¶¶121-122, 133, 150-151.

- 4 -

St. Luke's issued a press release on March 28, 2011 ("Press Release") in conjunction with the filing of the suit stating that the hospital sought "a full public accounting of the defendants' alleged inappropriate actions" in bringing "alleged unfounded charges." Complaint, ¶38, Exhibit A, at 2. The Press Release includes the following quote from Richard A. Anderson, St. Luke's President and Chief Executive Officer ("CEO"):

> "At St. Luke's, we believe it is our responsibility to respond to frivolous lawsuits which represent an inappropriate and unconscionable attempt to divert precious health care resources for personal financial gain. We believe the actions of these individuals and their attorneys are reprehensible and should not go unaddressed," says Richard A. Anderson, President & CEO, St. Luke's Hospital & Health Network. "St. Luke's has a strong culture and belief system that guides us to do what is right. We measure all our decisions, all our actions, by this standard. Our patients, the communities we serve, our physicians and our staff deserve nothing less."

*Id.* (emphasis added). Various newspaper articles were written in the days following the issuance of the Press Release, with several of those articles including quotes from St. Luke's spokesperson, Susan M. Schantz, observing that there is a "very contentious environment for practicing medicine in Pennsylvania because of the malpractice situation" and that "[u]ntil something is done, we will continue to lose doctors to other states." Complaint, ¶39, Exhibit B, at 1 (Lehigh Valley Express Times Article, 3/29/11).

After deposing members of Decedents' families, St. Luke's moved to discontinue the First Dragonetti Actions against the Estates, and that motion was granted on September 27, 2013. The Estates subsequently filed

complaints asserting Dragonetti claims against St. Luke's, its counsel, Blank Rome, and various individual defendants ("Second Dragonetti Actions"). *See Miller v. St. Luke's University Health Network*, 142 A.3d 884, 888 (Pa. Super. 2016). These cases were tried together between June 16 and July 1, 2014. *Id.* On July 1, 2014, the jury found that St. Luke's and Blank Rome lacked probable cause to initiate or continue the First Dragonetti Actions against the Estates and did so with an improper purpose. *Id.* at 888-89. However, the jury found that the Estates suffered no damage as a result of St. Luke's and Blank Rome's conduct. *Id.* Following post-trial motions, the parties filed cross-appeals; this Court ultimately affirmed the denial of post-trial relief, finding no merit to any of the appellate arguments. *Id.* at 890-98.

After the resolution of the Second Dragonetti Actions, Plaintiff filed a motion for summary judgment and motion for collateral estoppel in the First Dragonetti Actions, and Dr. Shane filed a motion for summary judgment. *St. Luke's Hospital v. Vivian*, Nos. 2011-C-1182, 2011-C-1183 (Lehigh County Court of Common Pleas, filed June 26, 2018), opinion at 4. On June 26, 2018, the Lehigh County court denied these motions. The court found that the jury's verdict in the Estates' favor in the Second Dragonetti Actions—that the First Dragonetti Actions were initiated and continued without probable cause as to the Estates—had no preclusive effect in the First Dragonetti Actions as to Plaintiff and Dr. Shane. *Id.* at 6-8. The Lehigh County court further rejected the remaining summary judgment arguments brought by the Plaintiff and Dr. Shane. *Id.* at 8-14.

The Lehigh County court scheduled trial to commence in the First Dragonetti Actions on October 21, 2019. Plaintiff settled prior to trial, agreeing to pay St. Luke's $10,000 to resolve all claims in those suits against him, and the matters were discontinued on February 18, 2020. Defendants' Motion for Summary Judgment, Exhibit 26 (Settlement Agreement), Exhibit 27 (Praecipe to Settle, Discontinue, and End).[2]

Plaintiff filed the present action in the trial court on March 26, 2012, shortly after St. Luke's filed the First Dragonetti Actions and issued the accompanying Press Release. Defendants in this action are St. Luke's; Anderson, St. Luke's President and CEO; Wax, St. Luke's Associate General Counsel; Schantz, St. Luke's spokesperson; Traub, an outside lawyer for St. Luke's; Blank Rome, the outside firm working for St. Luke's on the various Cullen-related cases, including the Wrongful Death Actions and First Dragonetti Actions; and Hankin and Zolfaghari, two Blank Rome attorneys. Complaint, ¶¶54-75. Plaintiff's complaint includes three counts against each of the defendants: defamation, false light invasion of privacy, and abuse of process. *Id.*, ¶¶126-54. The complaint focused on the allegedly defamatory Press Release distributed to members of the news media in conjunction with the filing of the First Dragonetti Actions, as well as related statements made by Schantz to the press. *Id.*, ¶¶25-27, 32-40, 44, 87-88, 102-12, Exhibits A,

---

[2] It is unclear on this record how the First Dragonetti Actions were resolved against Dr. Shane.

B. The complaint further averred that the First Dragonetti Actions were brought improperly, without any factual support, and in knowing contravention of the applicable statute of limitations and that the false claims in those lawsuits "were distributed extrajudicially" through the Press Release and related news coverage. *Id.*, ¶¶24, 27-31, 45-49, 86-88, 94-100, 108, 113-21.

The instant matter was stayed on October 9, 2012 pending the outcome of the First and Second Dragonetti Actions, with the stay lifted on June 11, 2020, following the resolution of those cases. Order, 10/9/12; Order, 10/2/14; Order, 6/11/20. Defendants filed amended preliminary objections, which were overruled on August 10, 2020. Order, 8/10/20. Defendants then answered the complaint on October 27, 2020.

Following the completion of discovery, Defendants filed a motion for summary judgment as to each of Plaintiff's claims.[3] On April 27, 2023, the trial court entered an order and opinion granting Defendants' motion for summary judgment and dismissing Plaintiff's complaint with prejudice.

---

[3] Plaintiff filed a motion for partial summary judgment, seeking to collaterally estop Defendants from challenging Plaintiff's assertion that the First Dragonetti Actions were brought for an improper purpose based upon the jury's verdict in favor of the Estates in the Second Dragonetti Actions. *See* Plaintiff's Motion for Summary Judgment, 7/15/22. The trial court denied the motion in its April 27, 2013 order, and the issue raised in the motion is not before this Court.

Plaintiff filed a timely notice of appeal from the grant of summary judgment and dismissal of his complaint.[4] Plaintiff presents the following issues on appeal:

> I. Did the lower court err in granting summary judgment in favor of [Defendants] on [Plaintiff's] defamation claim, based upon its determination he could not prove the falsity of [Defendants'] defamatory statements regarding him . . . [?]
>
> II. Did the trial court err in entering summary judgment in favor of [Defendants] on [Plaintiff's] false light claim based on its finding [that] he did not identify a provably false fact. . . [?]
>
> III. Did the lower court err in entering summary judgment in favor of [Defendants] on [Plaintiff's] claim for abuse of process on the ground he allegedly failed to identify any process [Defendants] abused, where [Plaintiff] specifically identified [Defendants'] "frivolous Motion for Protective Order," for which the lower court sanctioned them, as among the improper actions [Defendants] took to drive up his costs and retaliate against him for suing them?

Plaintiff's Brief at 3-4 (trial court disposition omitted).

Our standard of review of the trial court's grant of summary judgment is *de novo* and our scope of review is plenary. **Pyeritz v. Commonwealth**, 32 A.3d 687, 692 (Pa. 2011); **American Southern Insurance Co. v. Halbert**, 203 A.3d 223, 226 (Pa. Super. 2019). Summary judgment is properly granted in favor of a defendant where the material facts are undisputed and the defendant is entitled to judgment as a matter of law on those facts or where, after discovery, the plaintiff has failed to produce evidence sufficient to prove all elements of her cause of action. Pa.R.Civ.P.

---

[4] The trial court did not direct Plaintiff to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

1035.2; ***Criswell v. Atlantic Richfield Co.***, 115 A.3d 906, 909 (Pa. Super. 2015); ***Krauss v. Trane U.S. Inc.***, 104 A.3d 556, 563 (Pa. Super. 2014). In determining whether there is a genuine dispute of material fact that precludes summary judgment or whether the plaintiff has produced sufficient evidence to support a cause of action, we must view the record in the light most favorable to the non-movant and all doubts as to the existence of a genuine issue of material fact must be resolved against the movant. ***Criswell***, 115 A.3d at 908-09; ***Krauss***, 104 A.3d at 563; ***Petrina v. Allied Glove Corp.***, 46 A.3d 795, 798 (Pa. Super. 2012). An inference of fact that amounts merely to a guess or conjecture, however, is insufficient to defeat summary judgment. ***Kornfiend v. New Werner Holding Co.***, 241 A.3d 1212, 1217-18 (Pa. Super. 2020), ***aff'd***, 280 A.3d 918 (Pa. 2022); ***Krauss***, 104 A.3d at 568.

In his first issue, Plaintiff argues that the trial court erred in granting summary judgment in favor of Defendants on the defamation claim where there was ample evidence of the falsity of Defendants' statements. Plaintiff contends that Defendants' statements in the Press Release that the Wrongful Death Actions were "frivolous lawsuits" and Plaintiff was "reprehensible," "inappropriate[,] and unconscionable" for filing those actions are not mere opinion as the trial court held. Complaint, Exhibit A at 2; ***see also*** Trial Court Opinion, 4/27/23, at 7. Observing that various Pennsylvania statutes and rules allow for sanctions against frivolous lawsuits, Plaintiff contends the frivolousness of the suits was a matter of truth or falsity, which should be

decided by a jury. According to Plaintiff, the trial court failed to consider any of the evidence he put forward that the lawsuits were not frivolous.

In addition to the allegedly defamatory statements in the Press Release and related statements to the press, Plaintiff asserts that Defendants are also liable for allegations concerning Plaintiff within the complaints of the First Dragonetti Actions. While recognizing that a litigant is generally protected by judicial privilege from a defamation claim based upon statements made in pleadings, Plaintiff contends that Defendants forfeited this privilege when they issued the Press Release to a wide audience repeating the allegations of the First Dragonetti Actions and citing the associated Lehigh County court docket numbers. Plaintiff argues that Defendants thus "excite[d] the interest" of the press in Defendants' allegations concerning Plaintiff and "encouraged the recipients to read the complaints" and ultimately write newspaper articles repeating the allegations contained therein. Plaintiff's Brief at 45-48. According to Plaintiff, the allegedly defamatory material from the complaint that was repeated in press reports was the claim that Plaintiff enlisted Dr. Shane to prepare "boiler plate" statements of merit and paid him a bonus for each successful lawsuit. Complaint, ¶39, Exhibit B, at 2 (Lehigh Valley Express Times Article, 3/29/11); Hall Dragonetti Action Complaint, ¶¶131-45; Miller Dragonetti Action Complaint, ¶¶104-18.

In determining whether a statement is capable of defamatory meaning,[5] the court must view the statement in context, with close attention to the nature of the audience of the message. *Meyers v. Certified Guaranty Co., LLC*, 221 A.3d 662, 670 (Pa. Super. 2019); *Kuwait & Gulf Link Transport Co. v. Doe*, 216 A.3d 1074, 1085 (Pa. Super. 2019). Among the factors that must be addressed is whether the allegedly defamatory statement constitutes an opinion, which is a question of law for the trial court to assess. *Meyers*, 221 A.3d at 672; *Kuwait & Gulf Link Transport*, 216 A.3d at 1085. "A statement of fact can be verified as true or false, whereas an expression of opinion only conveys a subjective belief of the speaker." *Meyers*, 221 A.3d at 670 (citing Restatement (Second) of Torts § 566, Comment (a) and noting that "Pennsylvania has adopted the Second Restatement's approach to defamation").

_____

[5] The elements of a defamation claim in Pennsylvania are set forth in the Uniform Single Publication Act, which requires that a plaintiff prove: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. 42 Pa.C.S. § 8343(a); *Joseph v. Scranton Times L.P.*, 129 A.3d 404, 424 (Pa. 2015). When the issue is properly raised by the plaintiff, the defendant has the burden of proving the following elements: (1) the truth of the defamatory communication; (2) the privileged character of the occasion on which it was published; and/or (3) the character of the subject matter of defamatory comment as of public concern. 42 Pa.C.S. § 8343(b); *Joseph*, 129 A.3d at 424-25.

There is no "wholesale defamation exemption for anything that might be labeled 'opinion,'" however, because "expressions of 'opinion' may often imply an assertion of objective fact." *Milikovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990); *see also Meyers*, 221 A.3d at 671. We therefore apply a "distinct standard" when the publication at issue is an opinion: "A statement in the form of an opinion is actionable only if it may reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion." *Kuwait & Gulf Link Transport*, 216 A.3d at 1086 (citation and emphasis omitted); *see also Meyers*, 221 A.3d at 671; Restatement (Second) of Torts § 566. "A simple expression of opinion based on disclosed facts is not itself sufficient for an action of defamation." *Kuwait & Gulf Link Transport*, 216 A.3d at 1086 (citation omitted); *see also Kurowski v. Burroughs*, 994 A.2d 611, 618 (Pa. Super. 2010).

We agree with the trial court that statements in the Press Release and the quoted statements by St. Luke's spokesperson in related newspaper articles, *see* Complaint, Exhibits A, B, cannot support a defamation claim against Defendants. The Press Release largely consists of true statements of fact describing the First Dragonetti Actions, including that two complaints were filed in the Lehigh County court, the docket numbers and a list of the defendants in those actions, the claims brought in those cases, and the relief sought by St. Luke's. *See id.*, Exhibit A, at 1; *see also generally* Hall Dragonetti Action Complaint; Miller Dragonetti Action Complaint. The Press Release also accurately related that the Wrongful Death Actions filed on behalf

of the Estates were dismissed by the Lehigh County court in 2009 and that dismissal was affirmed by this Court the following year. ***See Miller***, Nos. 3463 & 3467 EDA 2009, unpublished memorandum at 3, 7.

Furthermore, the remaining allegedly defamatory portions of the Press Release and related news articles consist of non-actionable opinion or true statements of fact. As the trial court explained, "[t]he descriptors 'inappropriate,' 'unconscionable,' and 'reprehensible' are subjective characterizations by the speaker," pure opinion that does not imply the existence of undisclosed defamatory facts. Trial Court Opinion, 4/27/23, at 6-7 (quoting Complaint, Exhibit A, at 2). Similarly, the statements that the Wrongful Death Actions were brought in an "attempt to divert precious health care resources for personal financial gain" and "to damage the reputation of St. Luke's and its physicians," Complaint, Exhibit A, at 2, reflect St. Luke's opinion regarding the perceived motive for the filing of the actions against it. The assertion that the Wrongful Death Actions were "for personal financial gain," ***id.***, is a true statement of fact with respect to Plaintiff, who, as counsel of record for the Estates, had a monetary interest in the success of those cases.

Furthermore, the allegedly defamatory comments to the press by Schantz, St. Luke's spokesperson, that there is a "very contentious environment for practicing medicine in Pennsylvania because of the malpractice situation" and that "[u]ntil something is done, we will continue to lose doctors to other states," ***id.***, Exhibit B, at 1 (Lehigh Valley Express Times

Article, 3/29/11), represents opinion regarding the state of medical practice within the Commonwealth. To the extent that this statement implies a verifiable fact that doctors were leaving Pennsylvania, such a fact was not a statement about Plaintiff.

Plaintiff focuses this Court on the statement by Anderson, St. Luke's CEO, in the Press Release that St. Luke's "believe[s] it is our responsibility to respond to frivolous lawsuits," *id.*, Exhibit A, at 2, arguing that frivolousness is a matter of truth or falsity and that the Wrongful Death Actions were not frivolous as they were based upon the fact that Decedents died of heart-related ailments while in Cullen's care and the lawsuits were supported by Dr. Shane's certificate of merit. We agree with Plaintiff that frivolousness is a well-defined, provably true or false concept at law, and, in certain cases, a statement that an individual brought a frivolous lawsuit may form the basis of a defamation claim. *See, e.g.*, Pa.R.Civ.P. 240(j)(1), Note ("A frivolous action or proceeding has been defined as one that 'lacks an arguable basis either in law or in fact.'") (citation omitted); *Ocasio v. Prison Health Services*, 979 A.2d 352, 355 (Pa. Super. 2009) (same).

Nevertheless, under the present circumstances, we do not find that the statement that St. Luke's was "respond[ing] to frivolous lawsuits," Complaint, Exhibit A, at 2, is of a defamatory character. The "response" contemplated in the Press Release was St. Luke's filing of a wrongful use of civil proceedings cause of action under the Dragonetti Act, a statute which was enacted for the specific purpose of providing defendants with recourse to respond to frivolous

- 15 -

lawsuits. **See** 42 Pa.C.S. § 8354(3) (lack of probable cause for action is element of Dragonetti Act claim); Pa.R.Civ.P. 1023.1, Note (describing the Act as providing "additional relief from dilatory or frivolous proceedings"); **Villani v. Seibert**, 159 A.3d 478, 491 (Pa. 2017) (stating that the Act "manifests a legislative purpose to compensate victims of frivolous and abusive litigation"); **Stone Crushed Partnership v. Kassab Archbold Jackson & O'Brien**, 908 A.2d 875, 877 n.1 (Pa. 2006) (providing that the Act was enacted "[i]n response to frivolous lawsuits"). Therefore, by stating that wrongful use of civil proceedings claims had been initiated following the dismissal of the Wrongful Death Actions, the Press Release had already communicated that St. Luke's deemed those earlier actions to be frivolous and the further statement that St. Luke's believed that it was its "responsibility to frivolous lawsuits" had no additional defamatory meaning.[6]

_____

[6] Even to the extent we would find the statement that St. Luke's deemed the Wrongful Death Actions to be frivolous as defamatory, we would find that it represents a true statement of fact and was therefore not actionable. As was made clear in the summary judgment proceedings in the Wrongful Death Actions, Cullen denied any culpability in Decedents' death, he was not participating as a witness in these cases, his silence could not be deemed an admission of liability, and no other evidence was adduced demonstrating how Cullen allegedly caused Decedents' death; therefore, expert testimony was essential to proving a *prima facie* case of negligence against St. Luke's. **Miller**, Nos. 3463 & 3467 EDA 2009, unpublished memorandum at 2-7. However, the Estates' own medical expert indicated in his report that Decedents "could neither be included or excluded from the group identified as Cullen's victims" and that "Cullen's testimony would have been vital in terms of making such a conclusion to a reasonable degree of medical certainty." **Id.** at 3 (citation omitted). Thus, at the time of the dismissal, the action "lack[ed] an arguable basis in . . . fact." **Ocasio**, 979 A.2d at 355. While other counsel
*(Footnote Continued Next Page)*

Furthermore, to the extent Plaintiff bases his defamation cause of action on allegations made within the First Dragonetti Action complaints themselves, this claim also fails.  It is well-settled that

> All communications pertinent to any stage of a judicial proceeding are accorded an absolute privilege which cannot be destroyed by abuse.  Thus, statements by a party, a witness, counsel, or a judge cannot be the basis of a defamation action whether they occur in the pleadings or in open court.

*Greenberg v. McGraw*, 161 A.3d 976, 981 (Pa. Super. 2017) (citation omitted); *see also Bochetto v. Gibson*, 860 A.2d 67, 71 (Pa. 2004); *Forbes v. King Shooters Supply*, 230 A.3d 1181, 1188 (Pa. Super. 2020).  Thus, the complaints filed by St. Luke's and its attorneys in the First Dragonetti Actions were "clearly protected by the [judicial] privilege as [they were] not only (1) issued as a regular part of the legal proceedings, but [were] also (2) pertinent and material to the proceedings."  *Bochetto*, 860 A.2d at 72 (holding that publication of complaint in trial court was protected by judicial privilege).[7]

However, our Supreme Court has recognized that the judicial privilege that attaches to communications that are part of legal proceedings may be

---

entered an appearance for the Estates during the course of the litigation, it is undisputed that Plaintiff remained counsel of record for the Estates when the Wrongful Death Actions were dismissed.

[7] We note that Defendants raised the judicial privilege as a defense in their new matter.  Answer and New Matter, ¶167; *see* Pa.R.Civ.P. 1030(a) (providing that "privilege" shall be raised as a defense in a new matter); *Schanne v. Addis*, 121 A.3d 942, 951 (Pa. 2015) (noting that judicial privilege is a defense that must be raised by a defendant).

- 17 -

lost where republished outside the scope of the proceedings. In **Bochetto**, our Supreme Court found that a party to a lawsuit who forwarded a complaint to a reporter committed an "extrajudicial act that occurred outside of the regular course of the judicial proceedings [that] was not relevant in any way to those proceedings." **Id.** at 72-73. Our Supreme Court has additionally held that counsel's sending of a letter to opposing counsel detailing his alleged acts of misconduct, with copies sent to the trial judge, opposing counsel's client, and the Disciplinary Board of the Supreme Court of Pennsylvania, fell outside the judicial privilege. **Post v. Mendel**, 507 A.2d 351, 355-56 (Pa. 1986). This Court has similarly ruled that judicial privilege does not shield a defense attorney's remarks at a press conference, in which the attorney repeated allegations from a brief regarding actions by State Police troopers, even though the allegations within the filed brief itself were absolutely protected. **Barto v. Felix**, 378 A.2d 927, 929-30 (Pa. Super. 1977); **see also Bochetto**, 860 A.2d at 72 & n.14.

Plaintiff's argument that Defendants republished the complaints to the press rests on four factors: (1) Defendants' use of "inflammatory language" in the Press Release, (2) the Press Release's inclusion of the docket numbers for the First Dragonetti Actions, (3) the listing of the causes of action in the Press Release, and (4) the media taking the bait by accessing the complaints and reporting the "most salacious allegations" therein. Plaintiff's Brief at 45-48. However, missing from this case is an affirmative act by any of Defendants to forward the complaint or the contents of the complaint to a

- 18 -

third party unconnected with the litigation. Unlike in **Bochetto**, Defendants did not send the actual complaints to members of the press, and unlike in **Barto**, Defendants did not repeat the "salacious allegations" of the complaints concerning, for example, the alleged bonuses paid to Dr. Shane, in the Press Release or in comments to the media. **Id.** at 47. Rather, Plaintiff's argument in favor of finding republication rests on Defendants' mere reference to their filing of the First Dragonetti Actions and the impassioned words used in describing the lawsuits. Plaintiff has cited no law that would find waiver of judicial privilege based on such limited conduct, and we decline to extend our law on republication on these facts.

Having found that none of the unprivileged statements by Defendants were capable of defamatory meaning, we therefore affirm the trial court's grant of summary judgment as to that claim. We next turn to Plaintiff's second issue, in which he argues that the trial court improperly granted summary judgment on his false light invasion of privacy claim. Plaintiff argues that there was "abundant evidence" that the Press Release cast him in a false light "as a scumbag and a criminal," by calling him "reprehensible" and stating that he had engaged in "inappropriate and unconscionable" conduct. Plaintiff's Brief at 52-53 (quoting Complaint, Exhibit A, at 2).

The false light cause of action is defined as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Meyers*, 221 A.3d at 674 (quoting Restatement (Second) of Torts § 652E); *see also Rubin v. CBS Broadcasting Inc.*, 170 A.3d 560, 568 (Pa. Super. 2017). "[U]nlike the law of defamation[,] . . . false light invasion of privacy offers redress not merely for the publication of matters that are provably false, but also for those that, although true, are selectively publicized in a manner creating a false impression." *Meyers*, 221 A.3d at 674 (citation omitted); *see also Rubin*, 170 A.3d at 568.

We agree with the trial court that the statements contained in the Press Release and related newspaper reports do not support a false light claim against Defendants.[8] As explained above, the Press Release consists of true statements of fact—related to the filing of the First Dragonetti Actions, the claims brought, the names of the defendants, and the type of relief sought— and statements of opinion that did not imply the existence of undisclosed false factual assertions. The opinions offered about Plaintiff were clearly negative and critical, but there was no evidence presented to show that any statement

---

[8] Although the judicial privilege has not specifically been extended to false light claims, the underlying rationale of our decisions affording an absolute privilege for communications made during a judicial proceeding applies equally in the context of a false light claim as when defamation is alleged. *See, e.g.*, *Schanne*, 121 A.3d at 947; *Bochetto*, 860 A.2d at 71. Therefore, we do not address whether the allegations within the First Dragonetti Action complaints themselves cast Plaintiff in a false light.

was false. Nor does a review of the statements at issue reveal any selective publication of true facts that would have created a false impression regarding Plaintiff. While Plaintiff asserts that Defendants portrayed him "as a scumbag and a criminal," Plaintiff's Brief at 52, a fair reading of the Press Release and associated articles reveals that Defendants' criticism of Plaintiff was confined to his handling of the Wrongful Death Actions and did not falsely imply that he was engaged in sordid, illicit behavior. Plaintiff is therefore not entitled to relief on his second appellate issue.

In his final issue, Plaintiff argues that the trial court erred by granting summary judgment as to his abuse of process claim. The abuse of process tort is defined as "the use of legal process against another primarily to accomplish a purpose for which it is not designed." **Lerner v. Lerner**, 954 A.2d 1229, 1238 (Pa. Super. 2008) (citation omitted); **see also Cruz v. Princeton Insurance Co.**, 972 A.2d 14, 15 n.1 (Pa. Super. 2009) (*en banc*) (citation omitted). "To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." **Lerner**, 954 A.2d at 1238 (citation omitted); **see also Cruz**, 972 A.2d at 15 n.1. Abuse of process requires a "perversion" of process, that is "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process" beyond merely "carry[ing] out the process to its authorized conclusion, even though with bad intentions." **Freundlich & Littman, LLC**

*v. Feierstein*, 157 A.3d 526, 531 (Pa. Super. 2017) (citations omitted); *see also Lerner*, 954 A.2d at 1238.

Plaintiff argues that Defendants committed an abuse of process when, during the First Dragonetti Actions, St. Luke's filed a May 10, 2013 motion for protective order asserting, inter alia, attorney-client privilege in response to Plaintiff's notices of deposition of various St. Luke's-aligned witnesses; St. Luke's withdrew its motion but then filed a renewed motion for protective order two months later seeking to limit depositions to relevant, non-privileged matters. *See* Plaintiff's Summary Judgment Response, 8/17/22, Exhibits M, N, P. Plaintiff filed a motion to compel discovery and a motion for sanctions, and on August 23, 2013, the Lehigh County court entered an order denying St. Luke's motion for protective order, granting Plaintiff's motion to compel, and granting Plaintiff's motion for sanctions, in part. *See id.*, Exhibits Q, S; *see also Saint Luke's*, 99 A.3d at 554 (affirming Lehigh County court's August 23, 2013 order, following St. Luke's appeal). Plaintiff claims that he was harmed due to the time wasted in completing discovery, as well as the expense of attorneys' fees, which the Lehigh County court directed St. Luke's to pay as sanctions. Plaintiff further asserts that St. Luke's actions, which he attributes to all Defendants, were for the improper purpose of "achieving tort reform in the Commonwealth of Pennsylvania and dissuading injured Pennsylvanians from filing meritorious lawsuits against St. Luke's." Plaintiff's Brief at 56 (quoting Plaintiff's Summary Judgment Response, 8/17/22, at 2).

We conclude that Plaintiff's abuse of process claim fails because he has not shown that Defendants' conduct with respect to the discovery motions in the First Dragonetti Actions was primarily for "a purpose for which the process was not designed." **Lerner**, 954 A.2d at 1238 (citation omitted). Plaintiff has alleged nothing more than St. Luke's filing of non-meritorious motions for protective order, which were denied and resulted in the imposition of sanctions against St. Luke's. Even if the motions were non-meritorious and filed with "bad intentions" to delay proceedings and cause more expense for Plaintiff, this would not support an abuse of process claim. **Freundlich**, 157 A.3d at 531 (citation omitted). Furthermore, Plaintiff's claimed motives for filing the motions—to push for tort reform and to dissuade future litigation against St. Luke's—are not the types of illegitimate purposes that the abuse of process tort is designed to address. **See McGee v. Feege**, 535 A.2d 1020, 1026 (Pa. 1987) (an abuse of process claim may be premised upon "the use of the legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process"); **Clausi v. Stuck**, 74 A.3d 242, 249 (Pa. Super. 2013) ("In evaluating the primary purpose prong of the [abuse of process] tort, there must be an act or threat not authorized by the process, or the process must be used for an illegitimate aim such as extortion, blackmail, or to coerce or compel the plaintiff to take some collateral action.") (citation omitted). We do not find that a party initiating legal action with a broader political purpose in mind or to deter future lawsuits against it commits

a "perversion" of legal process. *Freundlich*, 157 A.3d at 531 (citation omitted).

As we have determined that the trial court properly granted summary judgment as to each of the three claims Plaintiff raised in his complaint, we affirm the trial court's April 27, 2023 order granting Defendants' motion for summary judgment and dismissing the complaint.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/7/2024