**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SEVEN SPRINGS MOUNTAIN RESORT, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GABRIEL HUDOCK | : | |
| | : | No. 1575 WDA 2024 |
| Appellant | : | |

Appeal from the Order Entered November 20, 2024
In the Court of Common Pleas of Fayette County Civil Division at No(s):
Case No. 2021-00810

BEFORE:  PANELLA, P.J.E., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED:  December 22, 2025**

Gabriel Hudock appeals from the judgment entered in favor of Seven Springs Mountain Resort, Inc. ("Seven Springs"). He argues the court erred in overruling his preliminary objections, granting Seven Springs's motion for partial summary judgment, instructing the jury, and the disposition of motions *in limine*. We affirm.

Seven Springs is a year-round resort. Beginning in 1969 it developed ski slopes on the back of a mountain, which became known as the North Face. Neals Run Road ("Neals Run") is a single-lane gravel road, a portion of which traverses North Face. Neals Run is not maintained by Saltlick Township ("Township") from roughly November 15 to April 1 each year. Before 1991, Seven Springs had an informal agreement with the Township to close a portion of Neals Run during the ski season. It entered a formal agreement with the

Township in 1991 to allow Seven Springs to block vehicular traffic from November 15 to April 1 each year, with certain exceptions.

In 2008, Hudock purchased property on Neals Run adjacent to the western border of North Face. He constructed a vacation home, and, at that time, knew about the winter road closure. In 2011, he subdivided his property into six lots, each of which faced Neals Run. He intended to market the lots as ski-in, ski-out properties. In 2013, he attempted to sell his home, but received no offers.

In 2014, Hudock approached Seven Springs and proposed developing an alternate right-of-way from his property to Seven Springs's property. The parties discussed the proposal, but in September 2015 Seven Springs informed Hudock it was not interested.

About two months later, in November 2015, Hudock filed a Complaint seeking injunctive relief and petitioned for a preliminary injunction against the Township and Seven Springs requiring the Township to open Neals Run year-round. The court denied the preliminary injunction.

In the summer of 2016, Hudock petitioned the Township to vacate a portion of Neals Run. The Township denied the petition, and Hudock filed a petition for appointment of viewers in Fayette County.[1] He also filed a petition for appointment of viewers in Somerset County to vacate a small portion of

_____

[1] *Gabriel Hudock and Gloria Hudock v. Saltlick Township, Pa.*, No. 1750 of 2016.

- 2 -

Neals Run[2] that goes through that county.[3] (We will refer to the petition actions in Fayette County and Somerset County collectively as the "Petition Actions." We will refer to the complaint seeking an injunction and the Petition Actions collectively as the "Underlying Actions.") Seven Springs intervened in the Petition Actions.

In the Petition Actions, Hudock sought to vacate the portion of Neals Run going through his property and Seven Springs's property and to have the vacated portion become a private right-of-way. Seven Springs agreed that the road should be vacated as it runs over Seven Springs's property but opposed the creation of a private right-of-way.

Hudock filed a motion to coordinate the Underlying Actions. The trial court granted the motion. The court appointed a board of viewers, who conducted a view and held proceedings. During the proceedings, Hudock testified that he did not want skiing on North Face to end but knew that if he was successful in the Petition Actions Seven Springs might cease to operate. He further testified that he filed the actions to compel Seven Springs to grant him the right-of-way he previously requested:

> Q. What I'm asking, since you've petitioned the court and
> that process has resulted in an appointment of viewers and

---

[2] In Somerset County, Neals Run is called Kate Henry Road.

[3] ***Gabriel Hudock and Gloria Hudock v. Borough of Seven Springs, Pa.***, No. 587 of 2016. Gloria Hudock was named as a party in the Underlying Actions but did not otherwise participate in the litigation and is not a party in the abuse of process case. Trial Ct. Op., filed Apr. 3, 2024, at 5 n.7 ("Motions *in Limine* Op.").

has brought us all here today, do you want for yourself and the adjoining landowners, who you may or may not control, to have a private right-of-way across North Face realizing that that could potentially mean the end of skiing on North Face? Is that what you want?

A. What I want is to revisit the ingress and egress to my property that we proposed. You can spin it however you want. We're here today because Seven Springs didn't grant me the ingress and egress that I asked for. You can remedy the problem today and give me that access.

Q. I just want to be clear. The petition that you filed -- that's one in Somerset County and one in Fayette County -- to have this road vacated and to have a private right-of-way are really tools to your ultimate goal of having the access road you described provided for you; is that correct?

. . .

A. I still maintain that it is an illegal road closure, and that's why I took those measures.

Q. Listen to my question.

A. That's why I'm here.

Q. Do you realize that if a private right-of-way is granted to you and to adjoining landowners as you have sought in your petitions, that that means Seven Springs would have to keep Neals Run Road open across North Face during ski season? Do you realize that?

A. I do.

Q. Do you realize that if Seven Springs had to keep Neals Run Road open across North Face during ski season, that could be extremely detrimental to Seven Springs? It might even result in the end of Seven Springs?

A. You have an opportunity to remedy this if you want. You're spinning it.

. . .

Q. Do you realize that if you or one of the adjoining landowners demands that Neals Run Road be kept open

through ski season, that would be very detrimental to Seven Springs and might even result in the end of Seven Springs?

A. If it gets to that point, it would be of your own doing. We gave you -- we sat down and put together a remedy. You refused to grant it. So if you went our direction, you would not be faced with any of those issues if you made a business decision.

Q. So is the answer to my question, yes, I realize that?

A. That's a hypothetical. If you make a bad business decision, you're enjoying the closure of a private road for your own benefit and you won't grant a person a right-of-way, that's the way I see it.

Q. Is your answer then yes, you realize that Seven Springs faces that possibility?

A. That's what the law would dictate if you choose to do that and not cooperate.

Q. Now, is that what you want? Do you want to see Seven Springs shut down because there's no skiing on North Face?

A. Absolutely not.

Q. So the petitions you have filed and the civil action that you have filed are a means to compel Seven Springs to grant you the right-of-way that you seek to your property; true?

A. The way you're phrasing the question, that is true. Again, of your own devices.

Plaintiff's Motion for Partial Summary Judgment, filed May 16, 2022, at Exh. 6, No. 2212 of 2015, N.T., Nov. 6, 2019, at 159-63 ("Board of Viewers Transcript"); Trial Ct. Op. and Order, Dec. 7, 2022, at 3-5 (citation omitted) ("Prelim. Obj. Op.").

The board of viewers recommended vacating Neals Run where it passes over Sevens Springs's property and denying Hudock's request for a private right-of-way. The court entered a decree nisi and confirmed the report.

Hudock filed exceptions, which were denied in February 2021 in all aspects relevant to this appeal.

A short while later, in March 2021, a cemetery on the eastern end of Neals Run, Tinkey Cemetery, petitioned for a second view and an emergency petition to intervene. It asked the court to reconsider because the vacated portion of the road was part of the route for its funeral processions. Three days before Tinkey filed this petition, Hudock joined Tinkey Cemetery's petition for a second view. The court denied the motions.

Hudock appealed from the order denying his exceptions.[4] The Commonwealth Court affirmed. *Hudock v. Saltlick Twp.*, Nos. 321 & 391 C.D. 2021, 2022 WL 16955070 (Pa.Cmwlth. 2022) (unpublished mem.).

In May 2021, Seven Springs filed the instant action against Hudock alleging wrongful use of civil proceedings and abuse of process. It based the claims on Hudock's testimony before the board of viewers in which he acknowledged his motivation for pursuing the Underlying Actions was to compel Seven Springs to grant the alternate right-of-way it previously had denied. In response to preliminary objections, Seven Springs filed an amended complaint alleging only abuse of process. Hudock filed preliminary objections alleging, in part, that the abuse of process claim did not state a claim upon which relief may be granted. The trial court overruled the objections.

---

[4] Tinkey Cemetery also appealed the order denying its emergency petition to intervene. The Commonwealth Court consolidated the appeals. *See Hudock*, 2022 WL 16955070, at *1 n.1.

Seven Springs moved for partial summary judgment, in May 2022. The court granted the motion, finding there was no genuine issue of material fact because Hudock had admitted under oath that he used the board of viewers hearing to compel Seven Springs to grant him a private right-of-way:

> [Seven Springs] has shown that [Hudock] admitted, under oath, on November 6th, 2019, that he was using the November 6, 2019 Board of Viewers Hearing, not to obtain a private right-of-way on Neals Run Road (and the consequent ruination of Seven Springs's North Face Ski slopes), to put pressure on Seven Springs to compel Seven Springs to give him a private road. The Court therefore concludes that there is no genuine issue of any material fact as to the issue of liability and no defense which could be established by additional discovery.

Order, June 30, 2022.

The court addressed numerous motions *in limine*. It ruled that Seven Springs could admit evidence of expenses incurred in the abuse of process action to establish Hudock's state of mind/motive and to prove punitive but not compensatory damages. It ruled Seven Springs could admit evidence of counsel fees in the Underlying Actions for the purpose of compensatory and punitive damages.

The issue of damages went to trial, and Hudock testified as follows:

> Q Now, between paying to build and maintain a private road that didn't cross the ski slopes, and having Saltlick Township pay to keep open a public road that went across the ski slopes during the winter, did you have a preference?
>
> A I would rather have this simple driveway from Seven Springs.
>
> Q Why was that your preference?

A Because it didn't disturb anybody and it was a neighborly ask. They are my neighbors and I thought that it was a reasonable ask.

Q Between getting stuck on Neals Run Road and having Saltlick Township pay to keep open a public road that went across the ski slopes, did you have a preference?

A I didn't want to get stuck anymore so I'm not sure--the preference is...

Q Between getting--continually getting stuck on the road and having Saltlick Township keep the road open across Seven Springs's property, did you have a preference?

A I didn't want to get stuck anymore, so keep the road open.

Q Did that ever change?

A No.

. . .

Q Why did you decide ultimately to file the lawsuit?

A Because I was pinned in the corner and didn't have any other option. I didn't want to continue to be stranded and stuck getting to my house constantly.

N.T., Apr. 17, 2024, at 194-196. Hudock further testified that he would not have required Seven Springs to close the road had he been granted a right-of-way:

Q . . . You knew that having the right-of-way across Neals Run Road would allow you to control whether snow or ice was on that road in the winter months; correct?

A Correct.

Q And whether skiing would occur in the winter months?

A It would never have gotten to that point. Never.

Q So, if you had gotten what you wanted, a private right-of-way across Neals Run Road, you wouldn't have required Seven Springs to keep it open?

A I wouldn't have required Seven Springs to keep it open.

Q Keep it clear, free of snow, during the winter months?

A No, I did not want to shut down Seven Springs in any way, shape, or form. I did not want to harm Seven Springs at all. That was never my intention.

Q But you did want to engage in litigation over Neals Run Road for seven years; correct?

A I was forced. That was the other choice that I had and I got pinned in a corner. That was my last decision was to take legal action.

*Id.* at 26.

The court gave the jury the following instruction on abuse of process:

> The specific issues or questions in this case[] would consist of "Has the plaintiff established that the defendant committed an Abuse of Process?" Now, I decided that issue in June of 2022, but you need to understand that decision in order to carry out the remaining or to answer the remaining questions. In other words, an Abuse of Process leads to a recovery of the damages or monetary losses that flowed from that Abuse of Process, so you have to know what Abuse of Process you are seeking to establish the proper compensation for.

> So, the second question, of course is, what amount of money is appropriate to compensate the plaintiff as a direct result of the Abuse of Process.

> I do want to clarify that I found an Abuse of Process. The plaintiff claims that there was more than one Abuse of Process. I found one Abuse of Process and I will describe that for you in the course of the instructions. So, you would be awarding the amount of money to compensate as a direct result of any and all Abuses of Process that you found that occurred.

> . . .

> Let's talk first about the Abuse of Process. There are three elements or facts a plaintiff must prove to establish the Abuse of Process.

First, that the defendant used a legal process against the [plaintiff].

Second, the process was used primarily to accomplish a purpose for which the process was not designed.

Third, that harm was caused to the plaintiff.

Now, back in June of 2022, I found liability for Abuse of Process prior to trial based on primarily the following testimony, and I am not going to quote all of it. I am just focusing on the last couple questions and answers, and this would have been quoted to you during [Seven Springs's Counsel's] testimony, and this is testimony he elicited from Mr. Hudock during the hearing in front of the Board of View[ers]. After talking [a]bout closing of North Face, [Seven Springs's Counsel] said, "Now is that what you want? Do you want to see Seven Springs shut down because there is no skiing on North Face?" The defendant's answer, "Absolutely not." [Seven Springs's Counsel], "So, the petitions you have filed and the civil action that you have filed are means to compel Seven Springs to grant you the right-of-way that you seek to your property; true?" The defendant, "The way you're phrasing the question, that is true, again of your own devices." As a result of that testimony, I found that the defendant sought to prevent the plaintiff from closing Neals Run road during ski season and to grant him a private right-of-way on Neals Run Road primarily to accomplish the construction of a private road at a different location, and third, that financial harm was caused to the plaintiff. For that reason, I answered the first question on the verdict slip for you that there was an Abuse of Process in this case.

A person who uses a legal process against another is responsible to the person against whom the process was used, for all harm caused by such use if the process was used primarily to accomplish his purpose for which it was not designed. Abuse is where the party employs the process for some unlawful object, not the purpose of which it was intended by the law to effect. In other words, a perversion of that process. The[] word "Process" [a]s used in the tort of Abuse of Process has been interpreted broadly and encompasses the entire range of procedures incident to the litigation process, therefore, it is immaterial that the process

- 10 -

was properly issued, that it was obtained in the course of proceedings that were brought for probable cause and for a proper purpose or even that the proceedings terminated in favor of the person instituting or initiating them. The subsequent misuse or the misuse of the process [that] were properly obtained constitutes the misconduct for which the liability is imposed.

N.T., Apr. 19, 2024, at 35-38.

The jury returned a verdict in the amount of $600,000, which consisted of $400,000 in compensatory damages and $200,000 in punitive damages. Hudock filed a motion for post-trial relief, which the trial court denied. The court entered judgment. Hudock appealed.

Hudock raises the following issues:

1. Where Hudock did nothing more than to follow all process issued in connection with the Underlying [Actions] to their authorized ends, Seven Springs voluntarily intervened in two of the three Underlying [Actions], and Seven Springs neither alleged, nor proffered any evidence to prove that Hudock had done anything to pervert any process following its issuance, did the trial court commit legal error at numerous stages of the underlying proceedings by (1) failing to dismiss Seven Springs's Amended Complaint upon Hudock's demurrer; (2) entering partial summary judgment in Seven Springs's favor as to liability; (3) instructing the jury that Hudock was liable to Seven Springs for abuse of process; and (4) refusing to enter a compulsory nonsuit and/or a directed verdict against Seven Springs at trial?

2. Alternatively, do the trial court's pervasive errors during trial, individually or cumulatively, require a new trial? Specifically, whether the trial court prejudicially erred by (1) instructing the jury that Hudock was legally liable for abuse of process, (2) allowing Seven Springs to recover fees incurred in legal proceedings in which it had intervened voluntarily, (3) allowing Seven Springs to introduce evidence of the legal fees that Seven Springs claimed to have incurred in this action, and (4) instructing the jury that it could consider alleged conduct by Hudock beyond his acts

- 11 -

of commencing the Underlying [Actions]—which were the only acts alleged by Seven Springs to constitute an abuse of process—in assessing liability for compensatory and punitive damages.

3. Alternatively, did the trial court err in granting partial summary judgment on liability based solely on evidence concerning Hudock's motivation to initiate the Underlying [Actions] when that evidence was (a) insufficient to carry Seven Springs's burden, and (b) contradicted in the record that was before that court on that motion?

Hudock's Br. at 9-11. Although listed as three issues, each issue includes sub-issues. We will address some claims out of order, for ease of discussion.

### **Abuse of Process Cause of Action**

We will address Hudock's first two sub-issues and his last issue together. Hudock first claims the court erred in not dismissing the complaint because Seven Springs did not allege the core elements of an abuse of process claim. He argues that abuse of process involves the misuse of lawfully issued process for an improper purpose after the proceeding has commenced, not procuring the commencement of the proceeding. He relies on **Rosen v. American Bank of Rolla**, 627 A.2d 190 (Pa.Super. 1993), which he claims explained that "there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." Hudock's Br. at 33 (quoting **Rosen**, 627 A.2d at 192). He claims there must be an act or threat not authorized by the process, and alleges that did not occur here.

Hudock next claims the trial court confused the elements of a Dragonetti claim with those of an abuse of process claim. He argues the court instructed

- 12 -

the jury that Hudock sought to prevent Seven Springs from closing Neals Run during ski season "primarily to accomplish the construction of a private road at a different location" by commencing the Underlying Proceedings. *Id.* at 34-35. He claims that commencing a lawsuit for a purpose other than securing discovery, joinder of parties, or adjudication of the claim is an element of a Dragonetti claim, not of an abuse of process claim. He argues that an abuse of process claim requires conduct after the commencement of the proceedings that perverts the process from its authorized ends. He states he "instituted legal process and carried it out to its authorized conclusion," which, he maintains, is not an abuse of process. *Id.* at 38. He argues the court erred in denying Hudock's preliminary objections, granting partial summary judgment to Seven Springs, refusing to grant a directed verdict, and entering judgment against Hudock.

In his last claim, Hudock maintains the court erred in entering partial summary judgment because its interpretation of abuse of process was erroneous and because disputed issues of material fact existed. He argues Seven Springs did not allege or provide evidence of abuse of process. Further, he argues that even if the commencement of an action could satisfy the use of process element, the record contained evidence presenting a genuine issue of material fact concerning his reasons for commencing the action. He argues Seven Springs did not state a claim for abuse of process because its claims were "directed exclusively to Hudock's purported motivations in commencing the Underlying Proceedings," and said nothing about "post-issuance

corruption or perversion." *Id.* at 58-59. Hudock states that although he was clear he did not want to shut down skiing at Seven Springs, he did not say he would walk away from that relief if it were the only alternative to his remaining at the dead end of a four-mile road that often was impassable. He also says his testimony merely established he preferred settlement to litigation. He states that he testified that he believed Seven Springs could survive a court ruling in Hudock's favor.[5] He claims the court ignored this evidence, and made impermissible credibility determinations.

_____

[5] Hudock points to his following testimony from the Board of Viewers hearing:

> Q. You were asked on cross-examination by [Seven Springs's counsel] if you wanted to see Seven Springs shut down because there would be no skiing on the North Face slope if Neals Run Road were vacated and a right-of-way were granted. Tell the board, is it your intention to shut down Seven Springs with this petition.
>
> A. Absolutely not. I do not want to shut down Seven Springs.
>
> Q. Do you believe that closing Seven Springs has to be the result of this petition?
>
> A. Absolutely not.
>
> Q. And can you explain why?
>
> A. Well, there are several other options that we can explore if we would just have a healthy dialogue, constructive dialogue.
>
> Q. We've only heard discussion of one option, and I'll question you about it later, about the right-of-way from the driveway up to the Southwind area. Were any other options explored?

*(Footnote Continued Next Page)*

"[O]ur standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law." ***Feingold v. Hendrzak***, 15 A.3d 937, 941 (Pa.Super. 2011) (citation omitted). "Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint." ***Id.*** (citation omitted). We must accept as true "all material facts set forth in the challenged pleadings [and] all inferences reasonably deducible therefrom." ***Id.*** (citation omitted). "Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief." ***Id.*** (citation omitted).

_____

A. Again, we asked to mediate with Seven Springs to have good constructive outcome, and there are. I mean, when you ski out West, one example, they put bridges or ramps over the roads when they have a problem.

Q. Have you skied out west?

A. Yes. I have.

Q. Okay. Where else have you skied?

A. New England.

Q. They do what in New England?

A. Well, in certain problem areas where there's a problem with the road, they build over the road, which is expensive and, you know, it might not be economical.

Defendant's Response to Plaintiff's Motion for Summary Judgment, Exh. R, Board of Viewers Hearing Transcript, at 207-208. He further cites his affidavit, in which he states there are solutions that allow vehicular traffic to proceed under or over ski slopes. ***Id.***, at Exh. A, Aff. of Gabriel Hudock, at ¶¶ 14-16.

"[S]ummary judgment is only appropriate in cases where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." **Nicolaou v. Martin**, 195 A.3d 880, 891 (Pa. 2018) (citing Pa.R.C.P. 1035.2(1)). "When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party." **Id.** We "reverse a grant of summary judgment if there has been an error of law or an abuse of discretion." **Id.** at 892. "[O]ur standard of review is *de novo* and our scope of review is plenary." **Id.**

"The abuse of process tort is defined as 'the use of legal process against another primarily to accomplish a purpose for which it is not designed.'" **Vivian v. Blank Rome LLP**, 318 A.3d 890, 904 (Pa.Super. 2024) (quoting **Lerner v. Lerner**, 954 A.2d 1229, 1238 (Pa.Super. 2008)). "To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." **Id.** (citation omitted). The tort of abuse of process "requires a 'perversion' of process, that is '[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process' beyond merely 'carry[ing] out the process to its authorized conclusion, even though with bad intentions.'" **Id.** (quoting **Freundlich & Littman, LLC v. Feierstein**, 157 A.3d 526, 531 (Pa.Super. 2017)) (alterations in original).

- 16 -

"Abuse of process is, in essence, the use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process." *Rice Drilling B, LLC v. Scott*, 325 A.3d 663, 681 (Pa.Super. 2024) (quoting *P.J.A. v. H.C.N.*, 156 A.3d 284, 288 (Pa.Super. 2017)).

The "significance of [the word 'primarily'] is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." *Rosen*, 627 A.2d at 192 (quoting Restatement (Second) of Torts, § 682, comment b) (alteration in original). "The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it." *Id.* (quoting Restatement (Second) of Torst, § 682, comment b). Further, "[t]he word process as used in the tort of abuse of process has been interpreted broadly, and encompasses the entire range of procedures incident to the litigation process." *Shiner v. Moriarty*, 706 A.2d 1228, 1237 (Pa.Super. 1998) (quoting *Rosen*, 627 A.2d at 192).

Seven Springs alleged in its Complaint that "[e]ach part of the underlying legal process instituted by Hudock was only brought due to Seven Springs denying his request to build a private road across thousands of feet of its property[.]" Amended Complaint at ¶¶ 38-39. It asserted that the initiation of the Underlying Actions and the board of viewer's hearing testimony constituted abuses of process. It noted that Hudock testified that he was at the hearing in the Petition Actions "because Seven Springs didn't

- 17 -

grant [him] the ingress and egress that [he] asked for," and that Seven Springs could "remedy the problem" that day "and give him access." *Id.* at ¶ 39 (citations omitted). Accordingly, Seven Springs's Complaint alleged all steps of the proceedings were abuses of process, not just the initiation of the proceedings.

In the order granting the partial summary judgment motion, the court found that Hudock was using hearing before the board of viewers to compel Seven Springs to grant him a private right-of-way:

> [Seven Springs] has shown that [Hudock] admitted, under oath, on November 6th, 2019, that he was using the November 6, 2019 Board of Viewers Hearing, not to obtain a private right-of-way on Neals Run Road, but rather, to use the threat of a private right-of-way on Neals Run Road (and the consequent ruination of Seven Springs's North Face Ski slopes), to put pressure on Seven Springs to compel Seven Springs to give him a private road. . . .

Order, June 30, 2022. In its jury instructions, the court stated: "I found that the defendant sought to prevent the plaintiff from closing Neals Run road during ski season and to grant him a private right-of-way on Neals Run Road primarily to accomplish the construction of a private road at a different location." N.T., Apr. 19, 2024, at 37-38. Further, Hudock's testimony at the board of viewers hearing, which the court quoted in the jury instructions, established that his primary purpose in instituting and continuing the Underlying Actions was to force Seven Springs to grant him a right-of-way across its property. Board of Viewers Transcript at 159-63.

Hudock's motive in initiating and continuing the Underlying Actions—to compel an alternate right-of-way—was not merely an incidental purpose. Rather, it was his primary purpose. As Hudock testified, the parties would not have been at the hearing in the Petition Actions if Seven Springs had agreed to the right-of-way. The court did not err in overruling the preliminary objections or in its jury instructions.

Further, the court did not err in entering partial summary judgment because Hudock admitted under oath that he pursued the Underlying Actions to pressure Seven Springs into granting him a private right-of-way. Hudock's testimony that there could have been options other than closing the road or his requested right-of-way did not create a genuine issue of material fact as to whether his primary motive in initiating and continuing the Underlying Actions was to compel Seven Springs to grant him a private right-of-way.

Hudock next claims the court's interpretation of abuse of process violated his First Amendment petition rights. He argues instituting the Underlying Actions constituted "core government-petitioning activity," and his testimony was protected by the First Amendment. Hudock's Br. at 39. He argues the "sham" exception is not applicable here, because probable cause existed for the proceedings. *Id.* at 42-43.

"Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a); *see also Commonwealth v. Spone*, 305 A.3d 602, 609 (Pa.Super. 2023) (citation omitted) ("Even issues of constitutional dimension cannot be raised for the first time on appeal.").

Here, Hudock did not claim any First Amendment violation before the trial court. He therefore waived the claim for appeal.

Hudock next claims that Seven Springs lacks standing to maintain an abuse of process claim against him for the Petition Actions, in which it intervened. He argues that to establish an abuse of process claim, the plaintiff must prove the defendant used the legal process against the plaintiff. He maintains that the Petition Actions were not used against Seven Springs because he sued only the Township and Seven Springs Borough in those proceedings, and Seven Springs chose to intervene.

Generally "issues of standing present questions of law; thus, our standard of review is *de novo*, and our scope of review is plenary." ***Allegheny Reproductive Health Ctr. v. Pa. Dep't of Human Servs.***, 309 A.3d 808, 831 (Pa. 2024). An abuse of process claim does not include a requirement that the plaintiff be a named party in the underlying action. ***See, e.g., Rosen***, 627 A.2d at 192 (noting process includes noticing of deposition and issuing subpoenas, including those against third parties); ***Vivian***, 318 A.3d at 904 (citation omitted) ("To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff."). Further, a party may be able to bring an abuse of process claim if he was an indispensable party in the underlying action. ***See Hart v. O'Malley***, 647 A.2d 542, 550 (Pa.Super. 1994) ("***Hart***

- 20 -

*I*") (indispensable parties had standing to sue for wrongful use of civil proceedings).

The trial court concluded:

> The differences in the elements of the cause of action in an abuse of process claim vs. a wrongful use of civil proceedings (Dragonetti) action are critical to this analysis. Dragonetti actions have a statutory requirement that the defendant initiated civil proceedings against plaintiff, without probable cause. In contrast, abuse of process only requires that one use a legal process against another for an improper purpose-even if the proceedings were brought with probable cause and for a proper purpose. It is the misuse of the process for which the defendant is liable.

Trial Ct. Op., filed Apr. 3, 2024, at 28 ("Motions *In Limine* Op.") (emphasis omitted). The trial court noted that the Court in **Rosen** adopted "Illustration No. 3 from § 682 of the Restatement, assigning liability for abuse of process to a person that was not a party to the filed action." *Id.* at 29.

The court further noted that "[e]ven in a Dragonetti action, which requires the plaintiff to have been a party to the underlying action, the Pa. Supreme Court has granted a narrow exception where a property owner, who was clearly an indispensable party, was not named in the underlying action, but where the action would affect them 'so directly and substantially that it should be treated as an action against them for purposes of § 8351.'" *Id.* (quoting **Hart v. O'Malley**, 676 A.2d 222, 225 (Pa. 1996) (**Hart II**)) (emphasis omitted). The court noted that **Hart II** "recognized that 'particularly in cases where an injunction is sought and obtained, a civil proceeding can operate against a non-party in a direct and particular way as

- 21 -

fully as against a party, perhaps more so.'" *Id.* at 30 (quoting *Hart II*). The trial court noted that the Supreme Court found that the relevant analysis to apply is "whether the action directly and substantially impairs [the] plaintiff's interest." *Id.* It further noted that "appellate courts have consistently held that property owners are indispensable parties in lawsuits concerning the owners' property rights." *Id.* (quoting *Hart I*, 647 A.2d at 549). The trial court concluded that here there was "no doubt that the [Petition Actions] involved Seven Springs'[s] property rights and that Seven Springs was an indispensable party to those actions," and Hudock should have named Seven Springs as a defendant in the Petition Actions from the beginning. *Id.* The trial court concluded that "there is no requirement in an abuse of process action that the [p]laintiff was named as a party in the underlying proceedings, or that the [p]laintiff's participation in those proceedings was [in]voluntary." *Id.* at 31-32. It found "Seven Springs was a necessary party to the [Petition Actions] and the relief requested would directly and substantially affect their property rights." *Id.* at 32.

The court did not err. Here, Hudock instituted the Petition Actions to force Seven Springs to grant him a right-of-way, and therefore used the process against Seven Springs. Further, Seven Springs was an indispensable party to the Petition Actions, as it owned the property over which Neals Run traversed and had entered a contract with the Township regarding Neals Run. This claim fails.

Hudock next claims a new trial is needed because the court erred by removing the question of liability from the jury. He points to his trial testimony, where he said that although he preferred other outcomes to a complete victory in the petition proceedings, a victory would have left him in a better position than the status quo. Hudock's Br. at 48 (citing N.T., Apr. 17, 2024, at 194).

This claim lacks merit. The testimony Hudock cites occurred at trial, after the court granted the summary judgment motion. Further, one statement that opening Neals Run would have been preferable to him than the current path to his home does not create a genuine issue of material fact regarding whether the primary purpose in bringing the Underlying Actions was to force Seven Springs to grant him a right-of-way across its property. This claim fails.

**Damages**

In Hudock's next two issues, he challenges the trial court's order regarding the admission of evidence to establish damages. We review the trial court's decision as to the admission of evidence for an abuse of discretion. ***Czimmer v. Janssen Pharm.***, 122 A.3d 1043, 1058 (Pa.Super. 2015).

Hudock claims the court erred in allowing the jury to consider evidence of legal fees that Seven Springs incurred when it intervened in the Petition Actions. He argues he commenced the actions against the Township and Seven Springs Borough, not Seven Springs, and therefore he did not use the process against Seven Springs. He further argues Seven Springs did not

intervene to oppose the relief Hudock requested. Rather, it agreed that a portion of the road should be vacated and cease to be a public road. He maintains it was error for the court to allow Seven Springs to introduce evidence of its fees from actions where it intervened and sought and obtained the relief it wanted.

The trial court reiterated its findings that Seven Springs could bring the action even though not named in the Petition Actions and concluded Seven Springs could present evidence as to all three actions to establish compensatory and punitive damages:

> [T]here is no requirement in an abuse of process action that the [p]laintiff was named as a party in the underlying proceedings, or that the [p]laintiff's participation in those proceedings was [in]voluntary. Seven Springs was a necessary party to the [Petitions Actions] and the relief requested would directly and substantially affect their property rights. Therefore, Seven Springs may present evidence related to all three underlying actions (the Injunction Action and the two [Petition] Actions) for the purpose of establishing compensatory and punitive damages.

Motions *In Limine* Op. at 31-32. This was not an abuse of discretion. The evidence of attorneys' fees incurred in the Underlying Actions, including the Petition Actions, was relevant to the issue of damages caused by Hudock's abuse of process.

The court also rejected Hudock's argument that Seven Springs could not recover because it received a benefit from the proceedings:

> [T]o the extent that the vacation of the Road conferred a benefit on Seven Springs by eliminating the possibility that

- 24 -

the Road could be opened in the winter, it also conferred a benefit on Hudock, as the opening of the Road in the winter would have eliminated the ski-in/ski-out aspect of his own property, which Hudock acknowledged created significant value for his own lots.

The benefit rule, as stated in § 920 states, "When the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable." The comments to this Section set forth several limitations and exceptions to this general rule. Comment b states, "Damages resulting from an invasion of one interest are not diminished by showing that another interest has been benefited." The comment provides examples to illustrate the concept, including that harm to reputation for defamatory statements cannot be mitigated by a showing that the other financially benefit[ed] from their publication, unless the damages were specifically for pecuniary interests, and that damages for pain and suffering are not diminished by showing that the plaintiff's earning capacity has been increased by the defendant's act. This comment inherently rejects the idea of a pure "net harm" or "net benefit" analysis.

Seven Springs incurred actual litigation costs in defending against Hudock's abuse of process. An award of attorneys' fees for compensatory damages would be made to compensate Seven Springs for the costs incurred in litigation for an improper purpose, not for a reduction in the value of their property. Their "interest", for the purposes of comment b, would lie in not being subjected to litigation used for an improper purpose, and thus any increase in value to their property that resulted from the underlying action or the avoidance of potential legitimate litigation in the future (which may never occur).

Comment f addresses the equitable considerations of a § 920 analysis:

> f. Equitable considerations. The rule stated in this Section is limited by the general principle underlying the assessment of damages in tort cases, which is that

an injured person is entitled to be placed as nearly as possible in the position he would have occupied had it not been for the plaintiff[']s tort. This principle is intended primarily to restrict the injured person's recovery to the harm that he actually incurred and not to permit the tortfeasor to force a benefit on him against his will. (Restatement of Restitution §§ 2, 112). Thus, when a person has land or chattels that he has devoted to a particular purpose, he is entitled to continue to use them for that purpose, and the person who interferes with the use is not entitled to have damages mitigated by the fact that he has added to their market value. . . .

. . . The collateral benefit rule under § 920A of the Restatement is also instructive here, in that benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability. . . .

The nature of the cause of action for abuse of process and the context in this case are instructive here. A claim of abuse of process is not defeated by showing that the process was properly issued, that the proceedings were brought with probable cause and for a proper purpose, or that the proceedings ended in the favor of the person bringing them. The liability is for the misuse of the process. **Rosen**, at 192, quoting Restatement ( Second) of Torts, § 682, comment a. The actions at issue here were based on what could have been a legitimate cause of action, and to the extent that Hudock's relief sought that the road be vacated, that relief was legally proper and appropriate. The abuse of process was that Hudock did not want the relief he requested—his motive in bringing the action was to compel Seven Springs to give him an unrelated access road. To credit Hudock for the Court's award of part of the relief he disingenuously requested if the relief created some benefit to Seven Springs would be to ignore the nature of the liability and damages of the tort itself.

Similarly, Hudock's contention in Legal Issue No. 7 that the Court awarded Seven Springs relief that was different from simply denying his claims is also without merit. Hudock's [Petition Actions] sought to vacate the portion of the Road over Seven Springs'[s] property and along his property, and then to have that vacated portion declared a

> private right-of-way. Seven Springs'[s] position was that they agreed with Hudock that the section of the Road at issue should be vacated but opposed any private right-of-way. Petition to Intervene, ¶ 8. The relief the Court awarded was relief that Hudock requested, it just wasn't all the relief he requested. And more critically to the matter at hand, it was relief that Hudock requested but did not actually want.

*Id.* at 37-40 (some citations and emphasis omitted).

The court did not abuse its discretion. That Seven Springs received some benefit does not negate that it is entitled to damages for the harm caused by the proceedings, including the attorneys' fees incurred in prosecuting the Underlying Actions.

Hudock next argues the court erred in allowing Seven Springs to introduce evidence of fees incurred in the abuse of process action. He argues this violated the American Rule where a litigant cannot recover fees from an adverse party unless certain exceptions exist. He notes the court allowed evidence of the fees to prove Hudock's "state of mind/motive and for punitive damages." Hudock's Br. at 51. He argues this makes "no analytical sense" because the fees have nothing to do with Hudock's thought process in initiating the Underlying Actions. *Id.* He also says the fees are not connected to punitive damages, as those must be related to outrageous conduct and they were incurred in this action, not the Underlying Actions.

A jury may award punitive damages "for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Bert Co. v. Turk*, 298 A.3d 44, at 61 (Pa. 2023)(citation omitted). "In assessing punitive damages, the trier of fact can properly consider the

character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause[,] and the wealth of the defendant." **Id.** (quoting Restatement (Second) of Torts § 908(2)). The jury may consider "the act itself" and "all the circumstances," including the wrongdoer's motives, the parties' relations, and "the fact that the plaintiff has been put to trouble and expense in the protection of his interests, as by legal proceedings in this or in other suits." Restatement Second of Torts, § 908, cmt. e.

The trial court concluded evidence related to the abuse of process action was relevant to establish his state of mind/motive and for punitive damages:[6]

> [T]he legal fees incurred in the abuse of process action are relevant to the issue of punitive damages. Punitive damages are not for the purpose of additional compensation, but by definition are penal in nature. **Hart** [**v. O'Malley**, 781 A.2d 1211, 1217 (Pa.Super. 2001) ("**Hart III**")]. The total amount of time and money that Seven Springs has expended due to Hudock's abuse of process is relevant to the jury's consideration of whether punitive damages are appropriate. In addition, proof of a defendant's actions in an action can still be admitted as evidence of a defendant's state of mind or motives even when no damages can be awarded for the consequences of those actions. **Shiner**, [706 A.2d] at 1243.

> Seven Springs may present evidence of expenses incurred and any actions of the parties in the abuse of process action for the purpose of establishing Hudock's state of mind/motive and for punitive damages, but not for compensatory damages.

_____

[6] It found the evidence not admissible as evidence of compensatory damages. Motions _In Limine_ Op. at 27.

Motions *In Limine* Op. at 27-28. Under the facts of this case, we cannot conclude the trial court abused its discretion in this respect.

### Jury Instructions

Hudock maintains the court erred because it instructed the jury that it could find abuses of process in any of Hudock's actions. He maintains the court should have also instructed that the actions must amount to an actionable tort. It argues the instruction had no basis in the amended complaint, which only alleged the commencement of the Underlying Actions as the abuse of process and that the other acts were not a basis for the grant of partial summary judgment. He maintains he therefore lacked notice that any other actions would be the basis of abuse of process damages. He asserts it raised the potential for duplicative damages, claiming that any "'other' abuse of process should properly have been a subset of those fees." Hudock's Br. at 55.

We review a court's jury instructions to determine "whether the trial court committed a clear abuse of discretion or error of law which controlled the outcome of the case." *Gorman v. Costello*, 929 A.2d 1208, 1212 (Pa.Super. 2007). "Error in a charge is sufficient ground for a new trial if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue." *Quinby v. Plumsteadville Family Practice, Inc.*, 907 A.2d 1061, 1069 (Pa. 2006). "A charge will be found adequate unless 'the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission

in the charge which amounts to a fundamental error.'" ***Id.*** at 1069-70 (citation omitted). We will review the charge in its entirety. ***Id.***

As discussed above, the amended complaint alleged abuses of process beyond the initiation of the Underlying Actions, and therefore put Hudock on notice.[7] Further, here, the charge did not palpably mislead the jury. Rather, it informed the jury that the court had found Hudock committed an abuse of process, set forth the abuse of process law, and informed the jury it could find other actions constituted abuses of process. This claim fails.

### Catchall Claim

Hudock argues that each of the claims alone was sufficient to require a new trial, and that if viewed in combination, the "need for a new trial is overwhelming." Hudock's Br. at 55. We have concluded the trial court did not err. This claim lacks merit.

Order affirmed.

_____

[7] Seven Springs maintains that "[i]n terms of liability, all the trial court had not decided before trial was whether Tinkey's participation was an abuse of process by Hudock – because Seven Springs first discovered Hudock funded and orchestrated Tinkey's participation after the trial court had granted summary judgment on liability, when the parties . . . engaged in discovery on the issue of damages." Seven Springs's Br. at 69. It stated, "Seven Springs's attorney fees incurred in response to Tinkey's attempted intervention were thus properly presented to the jury in exhibits separate from its other bills for legal fees, permitting the jury to decide whether to award any or all of them." ***Id.*** at 70.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE:  12/22/2025